## J.M. DAVIDSON, INC.

v.

## Chelsey J. WEBSTER.

No. 01–0774.

Supreme Court of Texas.

Argued Dec. 11, 2002.

Decided Dec. 31, 2003.

Myra K. Morris, Corpus Christi, Chester J. Makowski, Nathan Wesely, Houston, Royston Rayxor Vickery & Williams, for petitioner.

Richard Daniel Nielsen, Corpus Christi, for respondent.

Justice JEFFERSON delivered the opinion of the Court, joined by Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, Justice WAINWRIGHT, and Justice BRISTER.

This is an interlocutory appeal of a trial court's order denying an employer's motion to compel arbitration under the company's alternative dispute resolution policy. We recently held that arbitration agreements between an employer and an at-will employee are enforceable when there is an agreement that is valid under traditional contract principles. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002). Here, we consider whether an arbitration agreement between an employer and an employee is enforceable if the employer reserves the unilateral right to modify or terminate personnel policies without notice. The trial court denied the employer's motion to compel arbitration, and the court of appeals affirmed. 49 S.W.3d 507.

We conclude that the arbitration agreement is ambiguous because it is not possible to determine from the document itself whether the unilateral termination right applies to the parties' agreement to arbitrate, or only to "personnel policies" concerning the at-will employment relationship. Accordingly, we reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

# I

## Background

J.M. Davidson, Inc. hired Chelsey Webster as a mechanic in December 1997. Soon after, Davidson asked Webster to sign a one-page document as a condition of his at-will employment. Webster signed the document, which provided:

J.M. Davidson, Inc.

### ALTERNATIVE DISPUTE RESOLUTION POLICY

EMPLOYMENT APPLICATION LANGUAGE

I, the applicant whose signature is affixed hereto, and the above listed Company, (hereinafter referred to as the "Company"), for itself and all of its officers, directors, agents and employees, all of which mutually agree and contract that any and all claims, disputes or controversies, whether based on the Construction [sic], Statutes, Code(s), Ordinances, Rules, Orders Regulations, and/or common law of he [sic] United States and/or of any State, and/or all subdivisions, of either, and/or asserted on the basis of contract, quasi-contract, personal injury, tort, offenses, quasi-offenses or otherwise, or arising out of, or in any way relating to this application for employment, or any other application for employment that I may have previously submitted, or may submit in the future, or the Company's decision to hire or not to hire me; including the arbitrability of any claim, dispute or controversy shall be exclusively and finally settled by binding arbitration administered by, Conducted [sic] under the Arbitration Rules of, and before the Arbitrator(s) of

an Arbitration Tribunal of the National Association for Dispute Resolution, Inc., pursuant to the provisions of the Federal Arbitration Act and/or any applicable Alternative Dispute Resolutions Act, whichever shall have the broadest effect, all claims of any rights to the contrary, including any right to trail [sic] by jury, being hereby expressly waived. The Arbitration Tribunal shall be the sole and existence [sic] of its jurisdiction over all parties and issues. Judgment upon any award may be entered in any Court—State or Federal—having jurisdiction.

I hereby certify that all of the information and statements made or furnished on this application are true and correct and I hereby grant the "Company" permission to verify such information and statements. I understand that any false statement or omission on this application may be considered as sufficient cause for rejection of this application, or for dismissal, if such false statement or omission is discovered subsequent to my employment. I further understand that the "Company" may perform a pre-employment investigation to determine my suitability for employment and I authorize the "Company" to have access to any and all records concerning my education or employment background. I hereby authorize any person or Entity having such information to release same to the "Company". I understand that the pre-employment investigation may include contacting my previous employers, and I hereby authorize such previous employers to release any and all information relating to my employment to the "Company". I understand that if I am extended an offer of employment, I will have to pass a physical examination as a condition of such employment. If employed, I agree to abide by and comply with all of the rules, policies and procedures of the "Company." I understand that if I am employed by the "Company", such employment will be "at-will" and that the "Company" may terminate my employment at any time and for any reason. I understand and agree that, in the event of my separation from any employment with the "Company", any and all information concerning my employment history may be furnished to any other employer with whom I seek employment and I hereby release and hold harmless the "Company", its affiliates, parents, subsidiaries, and successors, and its and their officers, directors, trustees, employees and agents from and against any and all claims and liability for furnishing such information. No supervisor or person other than the President of the "Company", can change or otherwise modify any employment agreement. The "Company" reserves the right to unilaterally abolish or modify any personnel policy without prior notice. I understand that this application will be considered valid and current for a period of not more than thirty (30) days.

In November 1998, Webster was injured at work and subsequently filed a workers' compensation claim. Although his condition improved temporarily, his doctor eventually placed him on "no work" status. Shortly thereafter, Webster's employment with Davidson ceased. The parties dispute whether Webster quit or was terminated.

Webster sued Davidson for wrongful termination under section 451 of the Texas Labor Code, alleging he was terminated in retaliation for filing a workers' compensation claim. *See* TEX. LAB. CODE § 451.001. Davidson denied Webster's allegations and filed a motion to compel binding arbitration under the company's alternative dispute resolution policy. Webster

responded that the arbitration agreement was unenforceable because it was illusory, unconscionable, and lacked mutuality. Following a hearing, the trial court denied Davidson's motion without explanation.

Davidson then filed an interlocutory appeal seeking to compel arbitration under the Texas Arbitration Act, and a mandamus action to compel arbitration pursuant to the Federal Arbitration Act. The court of appeals denied the petition for writ of mandamus, held that the arbitration agreement was illusory, and affirmed the trial court's order denying Davidson's motion to compel arbitration. 49 S.W.3d 507, 514. One justice dissented, concluding that the arbitration agreement was enforceable because both parties mutually agreed to arbitrate workplace injury disputes. *Id.* at 519. The dissent observed that the reservation language—concerning the company's unilateral right to modify or terminate personnel policies without notice—did not render Davidson's promise illusory, because it was "separable" from the promise to arbitrate. *Id.* at 518.

Davidson asks us to reverse the court of appeals' judgment and order the trial court to stay the trial pending binding arbitration pursuant to the Texas Arbitration Act.[1] *See* TEX. CIV. PRAC. & REM. CODE § 171.098.

## II

### Standard of Review

■ A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999). If the other party resists arbitration, the trial court must determine whether a valid agreement to arbitrate exists. *Id.*; TEX. CIV. PRAC. & REM. CODE § 171.021. The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *In re Kellogg Brown & Root,* 80 S.W.3d 611, 615 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding). If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Oakwood,* 987 S.W.2d at 573.

## III

### Analysis

■ Although we have repeatedly expressed a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *See, e.g., Prudential Secs., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995); *High Valley Homes, Inc. v. Fudge,* 2003 WL 1882261, at *3 (Tex.App.-Austin April 17, 2003, no pet.) (memorandum opinion); *see also Fleetwood Enters., Inc. v. Gaskamp,* 280 F.3d 1069, 1073 (5th Cir.2002) (federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate; instead, ordinary contract principles are applied). Arbitration agreements are interpreted under traditional contract principles. *Jenkens & Gilchrist v. Riggs,* 87 S.W.3d 198, 201 (Tex.App.-Dallas 2002, no pet.); *Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 930 (Tex.App.-Houston [1st Dist.] 1996, no writ); *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (holding that, when deciding whether the parties agreed to

---

1. Davidson has not filed a petition for writ of mandamus with this Court under the Federal Arbitration Act, *see Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.1992), and does not dispute that the Texas Arbitration Act controls.

arbitrate, "courts generally ... should apply ordinary state-law principles that govern the formation of contracts"). Thus, an employer attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements. At-will employment does not preclude formation of other contracts between employer and employee, so long as neither party relies on continued employment as consideration for the contract. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994) (because at-will employer always retains the option to discontinue employment at any time, the promise of continued employment is illusory and insufficient consideration for employee's promise not to compete). Here, the parties dispute whether the reciprocal promises to arbitrate are sufficient consideration to support enforcing the arbitration agreement.

We recently considered whether an arbitration agreement between an employer and at-will employee was supported by sufficient consideration. *See In re Halliburton Co.*, 80 S.W.3d at 566. We note, however, that the court of appeals' decision and both parties' submissions to this Court occurred before we decided *Halliburton*. In *Halliburton*, the employer notified employees of a new alternative dispute resolution program that required both the employer and the employees to submit all employment-related disputes to binding arbitration. *Id.* at 568. The terms included the employer's right to modify or discontinue the program, but also required the employer to give its employees notice of changes and stated that any amendments would apply only prospectively. *Id.* at 569–70.

We upheld the arbitration agreement between Halliburton and its employee. *Id.* at 570. We concluded that the employee's at-will employment status did not render the agreement illusory because Hallibur-

ton did not rely on continued employment as consideration for the agreement. Instead, mutual promises to submit all employment disputes to arbitration constituted sufficient consideration, because both parties were bound to the promises to arbitrate. *Id.* at 569.

Halliburton's right to modify or terminate the policy did not allow the employer to avoid its promise to arbitrate because it was limited by express contract provisions. *Id.* at 569–70. First, the policy stated that any changes only applied prospectively to unknown claims. *Id.* And second, if Halliburton terminated the policy, such termination required notice and applied to both Halliburton's and the employees' rights. *Id.* Therefore, Halliburton could not avoid its promise to arbitrate by amending or terminating the dispute resolution program. *Id.* Because the express terms of the policy provided that both the employee and Halliburton were bound to their promises to arbitrate, we held the agreement was not illusory. *Id.* at 570. Here, we are asked to decide whether the terms of the agreement between Davidson and Webster are distinguishable from *Halliburton*.

Davidson argues that its dispute resolution policy is enforceable because, like *Halliburton*, the agreement includes reciprocal promises to waive the right to litigation and submit all employment disputes to binding arbitration. *See In re Alamo Lumber Co.*, 23 S.W.3d 577, 579–80 (Tex. App.-San Antonio 2000, pet. denied) ("Since the parties surrendered their rights to trial by jury, these mutual promises supply valid consideration."). Thus, Davidson contends there is sufficient consideration to support the arbitration agreement. On the other hand, Webster argues that the arbitration agreement is illusory because the express terms of the agreement provide that Davidson was not bound by its terms.

■ It is clear that Davidson and Webster "mutually agree[d] and contract[ed]" to submit disputes to arbitration. At the end of the one-page document containing their agreement, however, is the following statement: "The Company reserves the right to unilaterally abolish or modify any personnel policy without prior notice." Our resolution of this case depends on the relationship between those two provisions.

■ In construing this agreement, we first determine whether it is possible to enforce the contract as written, without resort to parol evidence. Deciding whether a contract is ambiguous is a question of law for the court. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). To achieve this objective, we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951). No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex.1962); *Citizens Nat'l Bank v. Tex. & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941). A contract is unambiguous if it can be given a definite or certain legal meaning. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent. *Id.*

In this case, we cannot give the arbitration agreement a definite or certain legal meaning because it is unclear whether Davidson's unrestricted right to "unilaterally abolish or modify any *personnel policies*" gives it the right to terminate the *arbitration agreement* without notice. (Emphasis added.) Stated more succinctly, is the arbitration agreement a "personnel policy"?

We cannot answer this question by reading the agreement's terms. The agreement is titled "Alternative Dispute Resolution Policy" on one line, and "Employment Application Language" on the next. The document addresses several issues that refer specifically to the employment application process but have no bearing on alternative dispute resolution. For example, Webster agreed to submit to a background check and physical examination. He promised to abide by company policies and acknowledged that his employment was at-will. The "personnel policy" language is not in the first paragraph, which contains the promise to arbitrate, but appears only in the second paragraph, which discusses these other, unrelated employment issues.

In their attempt to construe the agreement, the court of appeals' justices could not agree on the scope of Davidson's right to terminate the agreement. Although silent on ambiguity, the majority held that the "personnel policy" language permitted Davidson to terminate the arbitration agreement at any time. 49 S.W.3d at 514 ("Although Davidson agreed to submit 'any and all claims, disputes or controversies' arising between it and appellee to arbitration, it explicitly retained the absolute right to modify or terminate the policy at any time."). Conversely, the dissent held that Davidson's unilateral right to terminate or modify personnel policies did not

affect the parties' separate agreement to arbitrate; in fact, the dissent noted that "[i]n the event the employer exercised that right [to modify or terminate] *the employee retained the right to force arbitration on the issue.*" *Id.* at 518 (emphasis added). If the dissent had interpreted the "personnel policy" language as applying to the arbitration agreement itself, Webster would not have the right to seek arbitration on the issue following termination of the arbitration agreement.

The proper interpretation of this language is critical.[2] In *Halliburton*, we rejected the argument that the arbitration agreement at issue was illusory because, among other things, it required ten days notice of any modification or termination and stated that any such amendment would apply prospectively only. 80 S.W.3d at 569–70. Thus, we held that "Halliburton cannot avoid its promise to arbitrate by amending the provision or terminating it altogether." *Id.* at 570. The termination provision in this case does not contain similar limitations. Accordingly, we hold that the agreement is ambiguous and must be remanded to the trial court to determine what the parties intended by the clause "The 'Company' reserves the

**2.** We note that most courts that have considered this issue have held that, if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory. *Dumais v. Am. Golf Corp.,* 299 F.3d 1216, 1219 (10th Cir.2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."); *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 315–16 (6th Cir.2000) (arbitration agreement was "fatally indefinite" and illusory because employer "reserved the right to alter applicable rules and procedures without any obligation to notify, much less receive consent from," other parties) (citing 1 SAMUEL WILLISTON, CONTRACTS § 43, at 140 (3d ed.1957)); *Hooters of Am., Inc. v. Phillips,* 173 F.3d 933, 939 (4th Cir.1999) (arbitration agreement unenforceable in part because Hooters, but not employee, could cancel agreement with 30 days notice, and Hooters reserved the right to modify the rules "without notice"; "[n]othing in the rules even prohibits Hooters from changing the rules in the middle of an arbitration proceeding."); *Gibson v. Neighborhood Health Clinics,* 121 F.3d 1126, 1133 (7th Cir.1997) (Cudahy, J., concurring) (promise to arbitrate was illusory in part because employer retained the right to change or revoke the agreement "at any time and without notice"); *Snow v. BE & K Constr. Co.,* 126 F.Supp.2d 5, 14–15 (D.Maine 2001) (citations omitted)(arbitration agreement illusory because employer "reserve[d] the right to modify or discontinue [the arbitration] program at any time"; "Defendant, who crafted the language of the booklet, was trying to 'have its cake and eat it too.' Defendant wished to bind its employees to the terms of the booklet, while carving out an escape route that would enable the company to avoid the terms of the booklet if it later realized the booklet's terms no longer served its interests."); *Trumbull v. Century Mktg. Corp.,* 12 F.Supp.2d 683, 686 (N.D.Ohio 1998)(no binding arbitration agreement because "the plaintiff would be bound by all the terms of the handbook while defendant could simply revoke any term (including the arbitration clause) whenever it desired. Without mutuality of obligation, a contract cannot be enforced."); *Simpson v. Grimes,* 849 So.2d 740, 748 (La.Ct.App.2003) (arbitration agreement lacked mutuality, making it "unconscionable and unenforceable": "By retaining the right to modify at will any and all provisions of the agreement in question, Argent allows itself an escape hatch from its promise to be similarly bound to arbitrate all disputes arising between the parties. Argent's ability to modify the specific terms of the agreement at will is not shared by the potential customer signing the agreement."); *In re C & H News Co.,* No. 13–02–529–CV, — S.W.3d ——, ——–——, 2003 WL 131770, *3, 2003 Tex.App. LEXIS 393, *11–*12 (Tex.App.-Corpus Christi January 16, 2003, orig. proceeding) (employer's right to change, modify, delete, or amend the arbitration agreement "with or without prior notification to employees" made the arbitration agreement illusory).

right to unilaterally abolish or modify any personnel policy without prior notice."

We add a brief response to the dissents. The proper interpretation of this document has split both the court of appeals and this Court. Justice Smith contends the agreement is unambiguous and clearly compels Webster to arbitrate. Justice Schneider says the agreement is unambiguous but clearly illusory. We will not reiterate our thoughts on ambiguity, but believe it helpful to respond to some of the dissents' concerns. Both dissents assert that the title of the document must be considered insofar as it references arbitration, but they omit from consideration that portion of the title, and contents of the document, that pertain to personnel policies. Justice Smith determines that the document is "primarily devoted to setting forth an arbitration policy," even though arbitration is discussed in only the first paragraph, which comprises less than fifty percent of the text (and, as Justice Schneider points out, only two of fifteen sentences). 128 S.W.3d at 240. The document is set out in full in this opinion, and we need not belabor the point. Suffice it to say that—as evidenced by the multiple disagreements about its meaning among this Court's justices—the agreement is subject to more than one reasonable interpretation. Under our precedent, the document is ambiguous. *Columbia,* 940 S.W.2d at 589.

Rather than follow this precedent, however, Justice Smith would enforce a deeply flawed agreement that he admits is "far from a model of precise drafting." 128 S.W.3d at 239. Indeed, the one-page document is rife with grammatical errors, misspellings, and omitted words. Webster waived his right to "trail by jury," even for claims "based on the Construction of ... he United States." He also agreed that "[t]he Arbitration Tribunal shall be the sole and existence of its jurisdiction over all parties and issues," whatever that means. While we generally favor arbitration agreements, we should not reflexively endorse an agreement so lacking in precision that a court must first edit the document for comprehension, and then rewrite it to ensure its enforceability.

Justice Schneider implies that, because the parties do not contend the agreement is ambiguous, we may not hold that it is. This is contrary to Texas law. *See Sage St. Assoc. v. Northdale Constr. Co.,* 863 S.W.2d 438, 444–45 (Tex.1993) (holding jury question was presented by ambiguity in construction agreement; a court may conclude that a contract is ambiguous even in the absence of such a pleading by either party); *Coker,* 650 S.W.2d at 393 (concluding agreement was ambiguous even though both parties asserted property settlement agreement was unambiguous and moved for summary judgment); *Acadian Geophysical Servs., Inc. v. Cameron,* 119 S.W.3d 290, 302 (Tex.App.-Waco 2003, no pet. h.); *W.W. Laubach Trust/The Georgetown Corp. v. The Georgetown Corp./W.W. Laubach Trust,* 80 S.W.3d 149, 155 (Tex.App.-Austin 2002, pet. denied); *Arredondo v. City of Dallas,* 79 S.W.3d 657, 667 (Tex. App.-Dallas 2002, pet. denied); *Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture,* 50 S.W.3d 531, 540 (Tex.App.-El Paso 2001, no pet.); *N. Cent. Oil Corp. v. Louisiana Land & Exploration Co.,* 22 S.W.3d 572, 576 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *Curbo v. State,* 998 S.W.2d 337, 343 (Tex.App.-Austin 1999, no pet.).

Finally, Justice Schneider states that he is reluctant to send this matter back to the trial court "because [he] cannot imagine what such a hearing would look like." 128 S.W.3d at 232. It is not necessary to speculate on the character of that proceeding: the trial court will conduct an ev-

identiary hearing to determine the parties' intent. *See Anglin*, 842 S.W.2d at 269 (noting that, "if the material facts necessary to determine [a motion to compel arbitration] are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts"); *see also Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 801 (10th Cir.1995) (Jenkins, J., concurring) (if arbitration agreement is ambiguous "the issue then becomes a factual question, to be decided from external evidence of the parties' intent, unless only one conclusion can be drawn from the undisputed evidence"); *Montgomery County Cmty. Coll. Dist. v. Donnell, Inc.*, 141 Ohio App.3d 593, 752 N.E.2d 342, 345 (2001) (holding that "an ambiguity in the [arbitration] agreement . . . must be resolved by an evidentiary hearing").

Because we cannot discern whether Davidson's unilateral right to terminate "personnel policies" applies to the agreement to arbitrate, we conclude that the arbitration agreement is ambiguous. We reverse the court of appeals' judgment and remand this case to the trial court for further proceedings consistent with this opinion. TEX. R. APP. P. 60.2(d).

Justice SCHNEIDER filed a dissenting opinion, joined by Justice O'NEILL.

Justice SMITH filed a dissenting opinion.

Justice SCHNEIDER, joined by Justice O'NEILL, dissenting.

I respectfully dissent. The controversy in this case involves a company's arbitration policy that an employee agreed to sign after beginning his employment. When the company sought to enforce the arbitration policy, the trial court denied the motion to compel arbitration. A divided court of appeals affirmed the trial court's order. The Court says that the wording in the arbitration policy is ambiguous and that the case should be sent back to the trial court to hear evidence concerning the parties' intent. But I would not be as hasty as the Court to send this matter back to the trial court because I cannot imagine what such a hearing would look like. I would, in the first instance, hold that the policy provisions are not ambiguous. Then, in the second instance, I would hold the employee is entitled to complete relief in this Court. The arbitration promise made by the company is illusory, and because it is, I would affirm the court of appeals' judgment denying the motion to compel arbitration.

## FACTS

Chelsey Webster ("Webster") went to work for J.M. Davidson, Inc. ("Davidson"). A few days after beginning employment, Webster signed the agreement that is at the heart of the controversy in this matter. The document, prepared by Davidson, is titled "Alternative Dispute Resolution Policy" ("ADR Policy").[1] It is undisputed that

---

1. The ADR Policy Webster signed contained only two paragraphs. The first paragraph had two sentences covering thirteen lines, and the second paragraph had thirteen sentences and nineteen lines, for a total of fifteen sentences spanning twenty-seven lines of text. Arbitration is only discussed in two of the fifteen sentences. The body of the document occupied approximately half of a letter size page. The ADR Policy has the company name, J.M. Davidson, Inc., at the top of the page in an all capitals, bold face font similar to a company letterhead. The title of the agreement, also in all capital, bold letters, is **"ALTERNATIVE DISPUTE RESOLUTION POLICY."** The sub-title of the document is "EMPLOYMENT APPLICATION LANGUAGE," styled in all capitals under the title.

Webster was employed by Davidson at the time he signed the agreement.

Approximately eleven months after commencing his employment, Webster was injured on the job. Webster filed for workers' compensation benefits. Then, about one month later, Davidson terminated Webster. Webster filed suit, alleging Davidson fired him in retaliation for filing a workers' compensation claim. Davidson sought to enforce the arbitration clause contained in the ADR Policy that Webster had signed.

A hearing on Davidson's Motion to Compel Arbitration was held before the trial court. During the hearing, Davidson introduced a copy of the arbitration policy signed by Webster. Davidson never signed the agreement. But, Webster has never complained about the absence of Davidson's signature.

Davidson had the initial burden of proof to establish the arbitration agreement's existence and to show that the claims asserted against it fell within the arbitration agreement's scope. *See Williams Indus. Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 134 (Tex.App.-Houston [1st Dist.] 2003, no pet.). If Davidson had met its burden of proof, then the burden would have shifted to Webster to show why the arbitration agreement did not apply. *Id.* At the Motion to Compel Arbitration hearing, the trial court properly considered the pleadings of the parties, the motion to compel arbitration, and responses. *See Jack B. Anglin Co. Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992) ("the trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations."). But, the trial court heard no live testimony about the ADR Policy. *Cf. id.* (noting that "if the material facts necessary to determine the issue are controverted," "the trial

court must conduct an evidentiary hearing to determine the disputed material facts").

After considering the evidence, the trial court denied the motion to compel arbitration without stating a reason for the denial. The record must be construed in a light favorable to supporting the judgment. See *Keller v. Nevel*, 699 S.W.2d 211, 212 (Tex.1985). Davidson appealed, and the court of appeals affirmed the trial court.

## ANALYSIS

In deciding the motion to compel arbitration, the trial court should have considered two issues: 1) was there a valid arbitration agreement; and 2) if so, did the agreement encompass the claim? *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999); *Dallas Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex.App.-Texarkana 1998, pet. denied); *Dalton Contractors, Inc. v. Bryan Autumn Woods, Ltd.*, 60 S.W.3d 351, 353 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The first of these issues is the subject of this appeal; thus, we must decide if the trial court was correct in concluding there was no valid arbitration agreement.

### A. Standard of Review

We review a trial court's decision to deny a motion to compel arbitration under a legal sufficiency or "no evidence" standard of review when factual findings are in dispute. *See Certain Underwriters v. Celebrity Inc.*, 950 S.W.2d 375, 377 (Tex. App.-Tyler 1996, writ dism'd w.o.j.). However, in this case, the only issue before us is the trial court's legal interpretation of the arbitration clause; no findings of fact were made. Thus, *de novo* review is appropriate. *Id.; see also Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 520 (Tex.App.-Austin 1998, no pet.); *Dalton Contractors, Inc.*, 60 S.W.3d at 353.

## B. Construction of the ADR Policy

Under the guise of a *de novo* review of the trial court's legal interpretation of the agreement, the Court may not create an agreement for the parties that is different from the one they entered. But, the Court attempts to do just that. The ADR Policy expressly reserves Davidson's right to "unilaterally abolish or modify any personnel policy without prior notice." The Court raises ambiguity as an issue *sua sponte* and concludes that this unilateral termination provision in the ADR Policy is ambiguous because "it is not possible to determine from the document itself whether the unilateral termination right applies to the parties' agreement to arbitrate, or only to 'personnel policies' concerning the at-will employment relationship." 128 S.W.3d at 225. But neither Webster, Davidson, the trial court, nor the Court of Appeals have suggested the language quoted above is ambiguous. I would hold that this language regarding the unilateral termination right unambiguously applies to the entire agreement, including the agreement to arbitrate. Although ultimately the contract fails for lack of consideration (see discussion below), it cannot be said that the ADR Policy is ambiguous.

### 1. The ADR Policy is not ambiguous.

There are several reasons why the document can be unambiguously read so that the universal termination right language applies to the entire document. First, the document is entitled "Alternative Dispute Resolution Policy," which suggests that the unilateral termination right contained within it would apply to arbitration, as the title would be applicable to the entire document. *See e.g. Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 606 (1959) (Calvert, J., dissenting) (recognizing that the title of an agreement can have the legal effect of importing words into the contract).

Secondly, the unilateral termination right applies to "any personnel policy," and it is reasonable to conclude that an arbitration policy would fall under the category of a personnel policy. Arbitration agreements are often a part of employee manuals or personnel policies. *See e.g., In re Tenet Healthcare Ltd.*, 84 S.W.3d 760, 763 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (analyzing a legally binding arbitration agreement appearing in an employee handbook containing personnel policies). Moreover, the ADR Policy was provided by an employer to be signed by an employee, suggesting it is a personnel policy. It is not only reasonable to believe the arbitration provision is a personnel policy of the company, it is unreasonable to reach any other conclusion. The Court seems to suggest that the "personnel policy" must be one or the other—either a policy, or an agreement. Surely a reasonable interpretation is that it could be both.

Webster even promises to abide by all of Davidson's "policies" in the ADR Policy, and it is reasonable to conclude that Davidson wanted to retain the right to unilaterally terminate all parts of the ADR Policy because the policy did not specifically exempt the arbitration agreement from the unilateral termination right.

Finally, neither Davidson nor Webster have ever argued that the unilateral termination right did not apply to the arbitration agreement. The actions of both the parties throughout their litigation reflect the belief that the arbitration policy is a personnel policy. They both came to the Motion to Compel Arbitration hearing arguing about several issues, none of which ever raised the question of whether the arbitration policy was a personnel policy. All of their actions throughout the litigation are consistent with the notion that the right to unilaterally terminate applied to the arbitration policy.

Webster and Davidson do offer different interpretations of the unilateral termination clause. But their differences have nothing to do with factual issues; rather, they differ in the legal significance of the arbitration policy. Nevertheless, the fact that their explanations differ does not render the contract ambiguous. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996) (noting that an ambiguity does not arise simply because parties offer conflicting interpretations of the contract). For an ambiguity to exist, both explanations must be *reasonable. Id.* Conversely, a contract is ambiguous if its language is subject to two or more reasonable interpretations. *See Monsanto v. Boustany*, 73 S.W.3d 225, 229 (Tex.2002). Here, there is only one reasonable interpretation of the ADR Policy, and the Court's insistence that it is ambiguous flies in the face of well-established rules of construction.

*2. Finding the ADR Policy ambiguous is contrary to well-established rules of construction.*

One of the basic tenets of contract interpretation is the assumption that the parties intend every part of an agreement to mean something. When construing a written contract, we are to ascertain the intent of the parties as expressed in the instrument. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. CBI Indus. Inc.*, 907 S.W.2d 517, 520 (Tex.1995); *718 Assocs., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 360 (Tex.App.-Waco 1999, pet. denied) (courts will enforce an "unambiguous instrument as written, and ordinarily, the writing alone will be deemed to express the parties intentions"). Contracts are to be read as a whole, and an interpretation that gives effect to every part of the agreement is favored so that no provision is rendered meaningless or as surplusage. *See Westwind Exploration Inc. v. Homestate Sav-*

*ings Ass'n.*, 696 S.W.2d 378, 382 (Tex. 1985).

The Court ignores these well-settled principles of contract interpretation when it concludes the agreement is ambiguous. Davidson's right to unilaterally abolish or modify *any* personnel policy without prior notice must be given its plain and ordinary meaning. Thus, the unilateral termination language must mean that Davidson can cancel or alter any personnel policy without informing Webster. Although I ultimately conclude that the ADR Policy is not binding because it is illusory, the agreement is not ambiguous.

*C. The ADR Policy is unenforceable because it is illusory.*

In my view, the unilateral termination right in the ADR Policy makes Davidson's performance optional as to the entire policy, and thus, renders the ADR Policy illusory. Thus, I would find that the agreement between Davidson and Webster fails to rise to the level of a contract as it lacks consideration.

*1. The ADR Policy does not contain consideration.*

Consideration is an essential element for a valid, enforceable contract. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408–09 (Tex.1997). If mutual, reciprocal promises are binding on both parties, they may constitute consideration for a contract. *Texas Gas Util. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex.1970); *Johnson v. Breckenridge–Stephens Title Co.*, 257 S.W. 223, 225 (Tex.Com.App.1924).

But, if the terms of a promise make performance optional, the promise is illusory and cannot constitute valid consideration. *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 645 (Tex.1994) ("When illusory promises are all that support a purported bilateral contract, there is no

contract."); RESTATEMENT (SECOND) OF CONTRACTS §§ 2 cmt. e; 77 cmt. a. Valid consideration exists if a party reserves the right to terminate an agreement with notice. *See* RESTATEMENT (SECOND) OF CONTRACTS § 77 cmt. b, illus. 5. But, a termination clause that allows a party to terminate the contract at will makes performance optional, and thus, makes any promise illusory. *See Light*, 883 S.W.2d at 645; *see also, Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 388–89 (Tex.App.-Houston [14th Dist.] 1998, pet. dism'd w.o.j.).

Here, the ADR Policy reserves Davidson's right to "unilaterally abolish or modify any personnel policy without prior notice." Under the plain language of the contract, Davidson reserved the right to abolish or modify *any* personnel policy. As explained above, the unilateral termination right would also apply to the agreement to arbitrate all claims. By retaining the right to terminate the ADR Policy at any time, Davidson can avoid arbitration. Thus, Davidson is not bound to its promise to arbitrate, and its promise to avoid litigation does not amount to consideration. *See In re Halliburton*, 80 S.W.3d 566, 570 (Tex.2002) (reciprocal promises are not sufficient if one party can avoid its promise). Because there is no consideration for the ADR Policy, the agreement is illusory and unenforceable.

*2. Davidson's attempts to create consideration fail.*

In an attempt to create consideration where none exists, Davidson claims that the language regarding the unilateral termination right complied with contractual mutuality requirements because, "If ... Davidson changed the ADR policy, or abolished it altogether, the changes would have applied to both parties." However, because Davidson alone had the unilateral right to terminate or change the agreement, the agreement is illusory. It is irrelevant that any changes made by Davidson would apply to both parties.

Davidson also argues that the promise to arbitrate is not illusory because, under *Halliburton*, 80 S.W.3d at 570, it is bound to resolve any dispute according to the ADR plan in effect at the time the dispute arises. However, the express contract terms we relied on to find the *Halliburton* agreement enforceable are missing here. The plain language of the Halliburton ADR plan required the employer to provide notice before enacting any modifications or terminating the plan. Davidson suggests that because the agreement we upheld in *Halliburton* required notice and prospective application, the same protective language can be implied here. I disagree.

In *Halliburton*, we relied on the ADR policy's notice provisions to conclude that Halliburton could not "avoid its promise to arbitrate by amending the [policy] or terminating it altogether." *Halliburton*, 80 S.W.3d at 570. Here, we cannot imply the obligations that precluded Halliburton from avoiding its promise to arbitrate. The agreement's plain language establishes Davidson's unhindered right to modify or terminate the agreement without notice. It is not proper to imply terms that contradict the express contract language. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609–610 (Tex.1972) (the terms of an implied contract are inferred from the circumstances).

Davidson further attempts to explain the unilateral termination language as simply acknowledging an employer's right to make changes to at-will employment terms, as in *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex.1986). But, the arbitration agreement's language contradicts Davidson's explanation.

In *Hathaway*, we held that an employer may enforce changes to an at-will employment contract if the employer unequivocally provides notice of a definite change and the employee accepts the change by continuing employment. *Hathaway*, 711 S.W.2d at 229. Here, the contract expressly allows Davidson to effect a change in the ADR plan's terms without notice. Thus, it is inconsistent to explain the reservation language as merely restating our holding in *Hathaway*, because the arbitration agreement's terms contradict the *Hathaway* requirements.

Additionally, whether an employer has satisfied the *Hathaway* requirements is a separate inquiry from the determination of whether the arbitration agreement is enforceable under traditional contract principles. If an employer seeks to change the terms of an employment relationship by implementing an agreement to arbitrate all disputes, the employer must show the arbitration agreement, standing alone, satisfies all requisite elements of a valid contract. *See Light*, 883 S.W.2d at 645–46; *Halliburton*, 80 S.W.3d at 569. This showing is separate from the employer's duty to meet the *Hathaway* requirements of notice and acceptance. *Id.*

Davidson's attempts to create consideration via an alternate reading of the language of the agreement are not reasonable. When the meaning of an agreement is plain and unambiguous, a party's construction is immaterial. *718 Associates, Ltd.*, 1 S.W.3d at 360. I would find the contract unenforceable because it fails for lack of consideration and is illusory.

*3. The Court incorrectly concludes that the unilateral termination right is ambiguous.*

The Court sends this case back for the trial court to consider parol evidence, finding that a fact issue exists concerning the applicability of the language in question to the arbitration agreement. But, as discussed above, the language unambiguously gives Davidson the right to unilaterally terminate any part of the agreement. Thus, there is no fact issue to be determined by the trial court and there is no need for parole evidence to be taken.

*4. The unilateral termination right does not only apply prospectively.*

Although I agree with Justice Smith that the contract is unambiguous and the arbitration agreement is a personnel policy subject to Davidson's unilateral termination right, I cannot agree that the right to abolish or modify personnel policies only applies prospectively with contemporaneous notice. The ADR Policy allows Davidson to unilaterally abolish or modify any personnel policy "without prior notice." Justice Smith looks to England to determine how to interpret the phrase "without prior notice."

However, applicable precedent can be found closer to home. For example, in *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890 (Tex.1991), we held that the language "without prior notice" waived the right to all notice. 801 S.W.2d at 893–94. Similarly, in *Musgrave v. HCA Mideast, Ltd.*, 856 F.2d 690 (4th Cir.1988), the court interpreted a contract providing that the employer had the right to terminate an employee's service "without prior notice." The Fourth Circuit concluded that this language "states simply that [the employee] could be terminated during the probation period without notice." 856 F.2d at 694. Justice Smith's interpretation that "without prior notice" means "with contemporaneous notice" is not supported— and indeed, is contradicted—by caselaw from American jurisdictions.

Justice Smith is essentially inserting a qualifying phrase into Davidson's unilateral, unqualified right to terminate. Even

though the ADR Policy permits Davidson to "unilaterally abolish or modify any personnel policy without prior notice," Justice Smith interprets this as requiring contemporaneous notice. The agreement contains no such limitation.

Justice Smith also attempts to distinguish our holding in *Hathaway* by noting that in that case, while we required an employer making a change to an at-will employment policy to provide notice, we did not specify that the notice had to be given before the change was made. Justice Smith contends that under our decision in *Hathaway*, notice could be "either in advance of or contemporaneous with the policy change." 128 S.W.3d 242. However, Justice Smith misunderstands our holding in *Hathaway*. In *Hathaway*, we explained the employee must have knowledge of the employer's proposed modification to an at-will employment policy to constitute effective notice; that is, the employee must "know the nature of the changes and the certainty of their imposition." *Hathaway*, 711 S.W.2d at 229. Requiring the employer to prove unequivocal notification of changes to the employment terms was based, in part, on fairness to the employee. See *id.* The requirement that an employee be aware that changes to the employment policy are certain to be imposed implies that there must be prior notice. It is unreasonable to conclude contemporaneous notice of a policy change is permissible under *Hathaway*. Indeed, permitting an employer to give contemporaneous notice of changed employment terms undermines *Hathaway's* concerns for fairness to an employee and stretches our holding in *Hathaway* too far.

Moreover, Justice Smith confuses the *Hathaway* requirements for changes to an at-will employment agreement with the requirements for a valid, enforceable arbitration agreement. They are two separate inquiries. Even assuming Justice Smith is correct that Davidson may give contemporaneous notice of a change to the terms of Webster's employment terms under *Hathaway*, the arbitration clause of the ADR Policy remains illusory and unenforceable. If contemporaneous notice to cancel the arbitration agreement is permissible, Davidson retains the right to discontinue performance at any time. Under this scenario, there is no consideration, as Davidson is not giving up a benefit or suffering a detriment. See e.g., *In re C & H News Co.*, No. 13–02–529–CV, —— S.W.3d ——, ——, 2003 WL 131770 at *4 (Tex.App.-Corpus Christi 2003, orig. proceeding). Thus, the arbitration clause would still be illusory and unenforceable.

## D. Enforceable arbitration agreements must bind both the employer and the employee.

There is no mystery to drafting an enforceable arbitration agreement. Capable counsel know that limitations on an employer's right to terminate the agreement are necessary so the agreement is not illusory. See, e.g., *In re Tenet Healthcare, Ltd.*, 84 S.W.3d at 766–67 (arbitration provision was enforceable because the right to terminate the agreement specifically excepted the arbitration agreement); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 616 (Tex.App.-Houston [1st Dist.] 2002, orig. proceeding) (arbitration agreement enforceable because it provided that it could be amended or terminated by the company by giving at least 10 days notice to employees and that such amendment would not apply to a dispute that had been initiated); *In re Jebbia*, 26 S.W.3d 753, 758 (Tex. App.-Houston [14th Dist.] 2000, orig. proceeding).

In this agreement, however, there was no limitation to Davidson's right to terminate, amend, or cancel the agreement.

The only consideration for the agreement was continued at-will employment, which amounts to no consideration. *Light,* 883 S.W.2d at 644. Thus, the arbitration agreement is illusory and unenforceable.

## CONCLUSION

I disagree with the Court's determination that the arbitration agreement is ambiguous. I also believe the agreement is illusory. In *Halliburton,* we said that an arbitration agreement's terms must bind both the employer and employee if the agreement relies on mutual promises to arbitrate for consideration. Davidson's ADR Policy lacks the protections we relied on in *Halliburton* to find the promises to arbitrate mutually binding. The unilateral right to modify or terminate the agreement without notice allows Davidson to avoid its promise at any time. Accordingly, I would hold that the arbitration agreement between Davidson and Webster fails to bind Davidson, and thus, the promise is illusory and the agreement is unenforceable for want of consideration. I would affirm the court of appeals' judgment.

Justice SMITH, dissenting.

I share the Court's view that the contract executed by the parties is far from a model of precise drafting, but I disagree that the phrase "any personnel policy" cannot be given a definite legal meaning. Like Justice Schneider, I believe that the arbitration policy falls within the ambit of the phrase "any personnel policy." However, I disagree with the portion of Justice Schneider's dissent that concludes the entire contract is unenforceable.

I would hold that the contractual provision allowing Davidson to "abolish or modify any personnel policy without prior notice" applies to the company's alternative dispute resolution policy, but that it does not waive Webster's right under Texas at-will employment law to contemporaneous notice of any change in Davidson's ADR policy. The rules of contract interpretation counsel against construing termination clauses as being retroactively exercisable and in favor of interpreting contracts to be valid. Because the relevant provision is properly construed as applying only prospectively to disputes arising after contemporaneous notice to Webster of Davidson's decision to abolish or modify its ADR policy, it does not render illusory the parties' otherwise clearly enforceable arbitration agreement.

## I

Whether an agreement imposes a duty on the parties to arbitrate a dispute is a matter of contract interpretation and a question of law for the court. *Tenet Healthcare Ltd. v. Cooper,* 960 S.W.2d 386, 388 (Tex.App.-Houston [14th Dist.] 1998, pet. dism'd w.o.j.). Similarly, whether a contract is ambiguous is itself a question of law. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). We review questions of law de novo. *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 312 (Tex.1999). In a de novo review, no deference is accorded to the lower court decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998).

The one-page contract was the only evidence presented by the parties in the trial court. Accordingly, the only issues on appeal are the legal questions of whether the contract is ambiguous and illusory. I apply de novo review to both.

## II

The contract states that Davidson "reserves the right to unilaterally abolish or modify any personnel policy without prior notice." The Court professes an inability to decipher whether the arbitration policy ratified by the contract is a "personnel

policy" and, *sua sponte*, therefore concludes that the contract is ambiguous. However, uncertainty or lack of clarity is not enough to render a contract ambiguous. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951) ("It must be conceded that there is an absence of artistry in the grammatical construction and punctuation of paragraph 1 of the contract, but is its meaning when properly read and interpreted so dubious as to subject the contract to the charge of ambiguity, thereby justifying the court in calling into play the rule of strong construction against the author of an instrument? We think not."); *Preston Ridge Fin. Servs. Corp. v. Tyler*, 796 S.W.2d 772, 777 (Tex.App.-Dallas 1990, writ denied); *Med. Towers, Ltd. v. St. Luke's Episcopal Hosp.*, 750 S.W.2d 820, 822 (Tex.App.-Houston [14th Dist.] 1988, writ denied).

Contractual provisions must be considered with reference to the entire instrument. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). The main heading of the parties' contract reads "Alternative Dispute Resolution Policy" and the text below purports to determine the relationship between Davidson and its personnel. *See E.H. Perry & Co. v. Langbehn*, 113 Tex. 72, 252 S.W. 472, 474–75 (1923) (title of an instrument, like every other portion of a contract, may be consulted in determining its meaning). In this context, we must give the phrase "any personnel policy" its natural and obvious import. *See, e.g., Pagel v. Pumphrey*, 204 S.W.2d 58, 64 (Tex.Civ. App.-San Antonio 1947, writ ref'd n.r.e.).

Applying the foregoing rules of construction, it is clear that the arbitration policy memorialized in the contract is a "personnel policy" and that the disputed

provision unambiguously provides that Davidson has the right to abolish or modify its arbitration policy without prior notice. I simply cannot conclude that an arbitration policy that governs the conditions of employment for personnel is not encompassed by the phrase "any personnel policy," particularly when that phrase appears in a contract that is primarily devoted to setting forth an arbitration policy.

### III

Justice Schneider asserts, and the Court implies, that if the disputed termination provision does apply to Davidson's arbitration policy, the contract is illusory. Because Davidson retained the ability to unilaterally abolish or modify its arbitration policy at any time, the argument goes, it assumed no obligation to Webster, and therefore Davidson's promise to arbitrate does not constitute consideration for Webster's reciprocal promise.[1] In my view, the provision's "without prior notice" language does not disclaim the requirement set forth in *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227 (Tex.1986) of contemporaneous notice for modifications to the at-will employment relationship. The provision is properly construed as applying only prospectively to disputes arising after contemporaneous notice to Webster of Davidson's decision to abolish or modify its ADR policy.

It is significant that the word "prior" precedes "notice" in the relevant provision. We must presume that each word in a contract has some significance and meaning. *Gates v. Asher*, 154 Tex. 538, 280 S.W.2d 247, 249 (1955). For example, courts presume that words that follow one another are not intended to be redundant. *See Gulf Metals Indus., Inc. v. Chicago*

---

1. However, there is no evidence that Davidson ever attempted to abolish or modify the arbitration agreement or that Webster ever harbored any doubt that he could compel arbitration for any dispute that arose, including the one before the Court.

*Ins. Co.,* 993 S.W.2d 800, 805 (Tex.App.-Austin 1999, pet. denied) (in construing the phrase "sudden and accidental," a temporal meaning was applied to "sudden" because "accidental" describes an unforeseen or unexpected event and ascribing the same meaning to "sudden" would render the terms redundant and violate the rule that each word in a contract be given effect.). Applying the foregoing Texas case law, we must presume that the parties in this case did not intend for the phrase "without prior notice" to mean without any notice.[2]

I have been unable to locate any Texas or federal case law specifically addressing whether the phrase "without prior notice" should be given the same meaning as "without notice."[3] However, an English appellate court concluded:

> A clause providing for termination of the scheme by the employer "without prior notice" means without notice in advance. Those words do not suggest that notice does not have to be given to effect termination of rights under the contract of employment. The clause puts the employee on warning that the scheme might not be permanent and that the employer reserves the right to terminate it without giving advance warning, but it does not mean that the employer's obligations can end without the employee being told.

*Bainbridge v. Circuit Foil (UK) Ltd.* [1997], Industrial Relations Law Reports (IRLR) 305 (Eng.C.A.). While authority authored on this side of the Atlantic is obviously preferable, an opinion issued by an English appellate court can surely be considered on a question such as the one presented here that does not involve interpretation of a statutory or constitutional provision, but rather interpretation of three basic English words contained in a private employment contract.

Consistent with the well-established rule that each word in a contract be given effect, the phrase "without prior notice" contained in the parties' contract should be interpreted to mean without notice in advance rather than without any notice. Therefore, the "without prior notice" language does not disclaim the contemporaneous notice that is required by Texas common law to effect a change in the terms of an at-will employment relationship.[4]

In *Hathaway,* we held that the party asserting a change to an at-will employment contract "must prove two things: (1) notice of the change; and, (2) acceptance of the change." 711 S.W.2d at 229. We noted that "[t]o prove notice, an employer

---

2. Neither the Court nor Justice Schneider attributes any meaning to "prior" and both repeatedly refer to the disputed provision as stating "without notice," thereby, *sub silentio,* writing the word "prior" out of the parties' contract.

3. Justice Schneider argues that *Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890 (Tex. 1991) and *Musgrave v. HCA Mideast, Ltd.,* 856 F.2d 690 (4th Cir.1988) are "applicable precedent." 128 S.W.3d at 234. However, neither case is on point. In both *Shumway* and *Musgrave,* whether the phrase "without prior notice" should be given a different meaning

from "without notice" was not at issue and, therefore, was neither addressed nor decided.

4. Another factor counseling in favor of interpreting the relevant provision as applying only prospectively without disclaiming Texas common law requiring contemporaneous notice is the use of the word "reserves." This word choice suggests that Davidson is memorializing a right that is consistent with its existing legal rights. "This word [reserves] means to keep or retain; that is to say, to keep what one already has. You do not reserve a right which you do not possess." *Baldwin v. Bd. of Tax–Roll Corrs.,* 331 P.2d 412, 414 (Okla.1958).

asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." *Id.* We did not indicate when the notice had to be provided, thereby implying it could be given either in advance of or contemporaneous with the policy change.[5]

The *Hathaway* requirements are applicable here because the parties sought to modify their pre-existing at-will employment relationship to include binding arbitration. The contract, including the arbitration agreement therein, is incident to the at-will employment relationship between Davidson and Webster and refers to this relationship in several places. Therefore, if Davidson abolished or modified its arbitration policy, this would effect a change in the terms of the at-will employment relationship between it and Webster.

"Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise." RESTATEMENT (SECOND) OF CONTRACTS § 77 cmt. a (1981). However, "[a] limitation on the promisor's freedom of choice need not be stated in words. It may be an implicit term of the promise, or it may be supplied by law." *Id.* cmt. d. The provision at issue here, while disclaiming advance notice, is consistent with *Hathaway's* contemporaneous notice requirement and, as such, should not be read as an attempt to disclaim this implied, default legal prerequisite for modifying the conditions of an at-will employment relationship.[6]

Other courts have determined that when a contractual termination or modification provision does not state whether it applies prospectively or retroactively, the default interpretation should be prospective only, as this avoids nullifying the intent of the parties to form an agreement. *See Barker v. Ceridian Corp.*, 122 F.3d 628, 638 (8th Cir.1997) (where retirement plan was silent regarding whether terms could be modified retroactively, prospective application favored because it avoids finding promise illusory); *Kemmerer v. ICI Ams., Inc.*, 70 F.3d 281, 287–88 (3d Cir.1995).

Several other courts have adopted *Kemmerer's* rationale:

The court's reasoning [in *Kemmerer*] can be captured in a simple illustration. If an employee is promised $10 per hour effective Monday, and told that her wage can be reduced at any time, and on Wednesday her wage is cut to $5 effective Thursday, her employer cannot refuse on pay day to give her $10 per hour for her work on Monday through Wednesday. Far from requiring that the employer express an explicit intent to pay $10 per hour for Monday through Wednesday's work notwithstanding the employer's freedom to reduce wages at any time, the Third Circuit held that what would have to be preserved explicitly would be an employer's right to

---

5. Justice Schneider argues that the relevant provision "contradict[s] the *Hathaway* requirements." 128 S.W.3d at 237. However, in *Hathaway* we required only notice, not advance notice.

6. This case is distinguishable from the following cases cited in the Court's second footnote in which arbitration agreements were held to be illusory because the provision at issue allowed one party to terminate the agreement at any time without *any* notice. *Floss v.*

*Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir.2000) (arbitration agreement was "fatally indefinite" and illusory because employer reserved the right to alter applicable rules and procedures without any obligation to notify employee); *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1133 (7th Cir.1997) (Cudahy, J., concurring) (promise to arbitrate was illusory because employer retained the right to change or revoke the agreement "at any time and without notice.").

apply the reduced wage *retroactively* to Monday through Wednesday's work. A contrary rule would lack any basis in contract law....

*Abbott v. Schnader, Harrison, Segal & Lewis, LLP*, 805 A.2d 547, 559 (Pa.Super.Ct.2002) (quoting *Amatuzio v. Gandalf Sys. Corp.*, 994 F.Supp. 253, 266 (D.N.J. 1998)).

Indeed, Justice Schneider's dissent[7] and, if its second footnote is more than mere dicta, the Court's opinion, would render the entire at-will employment contract between Webster and Davidson illusory because Webster's rate of compensation and all other "personnel policies" would be subject to unilateral, retroactive change by Davidson. Certainly, this is not a reasonable interpretation.

Because the disputed provision did not expressly authorize Davidson to retroactively alter the arbitration agreement, I would follow the rule that, unless expressly stated otherwise, such provisions should be interpreted to apply only prospectively. Consequently, Davidson would be perpetually bound to arbitrate any dispute that arose prior to Davidson informing Webster of a change in its arbitration policy. As such, Davidson could not, after a dispute had arisen, let alone during the final stages of binding arbitration, implement a change in its arbitration policy that would be applicable to that dispute.

Finally, reading the contract as allowing Davidson to unilaterally abolish or modify the arbitration policy only prospectively with contemporaneous notice is supported by the long-standing rule that contracts should be construed in favor of validity. *See Wood Motor Co., Inc. v. Nebel*, 150 Tex. 86, 238 S.W.2d 181, 183 (1951) ("It is elementary that if a contract is susceptible of two constructions, one of which would render it valid and the other void, the former will be adopted."); *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979); *Lavaca Bay Autoworld v. Marshall Pontiac Buick Oldsmobile*, 103 S.W.3d 650, 657 (Tex. App.-Corpus Christi 2003, no pet.). Since the parties are presumed to know the law and intend their contract to have legal effect, their contract will be construed in view of this presumption. *Foard County v. Sandifer*, 105 Tex. 420, 151 S.W. 523, 524 (1912); *Dewhurst v. Gulf Marine Inst. of Tech.*, 55 S.W.3d 91, 97 (Tex.App.-Corpus Christi 2001, pet. denied). We have specifically held that contracts should be construed in favor of mutuality. *Tex. Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex.1970).

Under this prospective construction, whereby Davidson is free to alter its arbitration policy after giving contemporaneous notice only as to claims that had not yet arisen, it is clear that the contract is not illusory. Once the parties' contract is read as not disclaiming the contemporaneous notice requirement set forth in *Hathaway*, this case becomes indistinguishable from *In re Halliburton Co.*, 80 S.W.3d 566 (Tex.2002) in which we held that a similar arbitration agreement was not illusory because the unilateral termination provision could be exercised only with notice.

## IV

By binding itself to arbitration until it provides contemporaneous notice of a new dispute resolution policy that will apply only prospectively, Davidson has provided consideration to Webster, and the parties' contract is therefore not illusory. If the

---

7. For example, Justice Schneider asserts: "Davidson's right to unilaterally abolish or modify *any* personnel policy without prior notice must be given its plain and ordinary meaning. Thus, the unilateral termination language must mean that Davidson can cancel or alter any personnel policy without informing Webster." 128 S.W.3d at 235.

contract were interpreted as allowing Davidson to retroactively revoke the arbitration agreement without contemporaneous notice, it would either be illusory or unconscionable, as Davidson could decide after a dispute arises whether it prefers to arbitrate or go to court. However, that is not this case.

Based on the foregoing, I conclude that the contract is neither ambiguous nor illusory, and therefore validly compels the parties to arbitrate their dispute. Accordingly, I respectfully dissent.