NO. 07-05-0156-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 24, 2006
_____

PRAXAIR INC.,

Appellant

v.

STERLING CHEMICALS, INC.,

Appellee
_____

FROM THE 405TH DISTRICT COURT OF GALVESTON COUNTY;

NO. CV-0060; HON. WAYNE J. MALLIA, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.[1]

This appeal arises from a purported breach by Praxair, Inc. of a guarantee agreement it executed with Sterling Chemicals, Inc. Upon trial by jury, the trial court entered judgment awarding Sterling damages against Praxair. The latter appealed and presented us with seven issues to review. We need only address the sixth for it is dispositive. Through it, the corporation asserts that it did not guarantee performance or

[1]Don Reavis, Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006).

payment of the obligation upon which the judgment was founded. We agree, sustain the issue, and reverse the judgment.

The controversy at bar arises from the alleged failure of Praxair Hydrogen Supply, Inc. (PHS) to construct piping that complied with a designated standard. According to the record, PHS and Sterling struck a deal under which the former agreed to build a particular facility to sell items produced thereat to Sterling. Documents were signed memorializing the accord. Furthermore, Praxair executed a guarantee assuring the performance and payment of various duties of PHS. One of many issues below for the jury and trial court to address involved whether the contractual duty upon which Sterling sued fell within the scope of the guarantee. Both the trial court and jury said it did. Now we answer the same question, and do so by concluding that it did not.

Per §1.1 of the guarantee in question, Praxair obligated itself to:

unconditionally and irrevocably guarantee . . . to Sterling the full, faithful and timely performance of all of the *obligations* of PHS, *including* the full and timely payment of any monies required to be paid by PHS under the Agreements (such performance and payment obligations being hereinafter collectively referred to herein as the *"Obligations"*), as and when same shall become performable or due and payable according to the terms thereof, as such *Agreements* may be modified from time to time by the parties.

(Emphasis added). The "Agreements" mentioned are defined in the guarantee. They consist of a "Ground Lease Agreement, a Product Supply Agreement for the supply of carbon monoxide, blend gas, hydrogen, and superheated steam, and a Utilities Agreement." Yet, Sterling tells us that

the agreements that were found to have been breached by PHS . . . were not found in the Ground Lease, the Product Supply Agreement, or the Utilities Agreement, but were instead *consistent* prior or contemporaneous agreements pertaining to the standards, quality, design and construction of the piping and equipment that was to be installed in [the] gas plant.

2

Thus, the controversy before us concerns whether these "consistent prior and contemporaneous agreements" fell within the borders of the guarantee. And, in resolving the matter we take care to read the guarantee agreement as a whole, *see J. M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003) (stating that contracts must be read as a whole), and strictly construe it in favor of the guarantor, *i.e.* Praxair. *See Reece v. First State Bank of Denton,* 566 S.W.2d 296, 297 (Tex. 1978).

As previously mentioned, the contract before us relates to Praxair's promise to guarantee the performance and payment of certain items by PHS. Moreover, these duties are identified as the *"*Obligations" which Praxair agreed to perform or pay "as and when same shall become performable or due and payable according to the terms thereof, as such Agreements may be modified . . . ." The last phrase is telling. By alluding to performance and payment in accordance "to the terms thereof, as such Agreements may be modified", one sees that the terms of performance and payment contemplated are those defined by the original "Agreements" or their modifications. Simply put, the obligations imposed upon PHS under the "Agreements" dictate the extent of Praxair's liability. That this is true is buttressed by other provisions of the contract.

For instance, §1.3 of the accord describes Praxair's liability as "primary" and states that if PHS was to "fail or refuse to perform or pay all or any of the Obligations . . . [the] Guarantor agrees (i) to complete such performance as required under the *Agreements* . . . ." (Emphasis added). Additionally, under article two wherein the parties discuss the "term" or duration of the guarantee, it is stated that the "Guaranty shall remain in full force and effect until all Obligations of PHS under all of the *Agreements* guaranteed . . . are fully and faithfully performed . . . ." (Emphasis added). Both provisions say nothing about

3

promises, contracts, duties, or the like of PHS other than those arising under the "Agreements." So, we find but one reasonable interpretation of the guarantee, and it equates the extent of Praxair's obligations as a guarantor to the duties of PHS as established in the "Agreements."

Our having so interpreted the guarantee leads us to but one outcome. This outcome is mandated by both the contractual definition ascribed by the parties to the word "Agreements" and the undisputed fact that the contracts purportedly breached by PHS "were not found in the Ground Lease, the Product Supply Agreement, or the Utilities Agreement", *i.e.* the documents comprising the "Agreements." Simply put, the duties allegedly breached by PHS fell outside the scope of Praxair's guarantee.[2] Thus, and as a matter of law, it was not liable for their performance or payment. In concluding otherwise, both the jury and trial court harmfully erred.

We reverse the judgment of the trial court and render judgment denying Sterling recovery against Praxair.

Brian Quinn
Chief Justice

Reavis, S.J., not participating.

---

[2]We are mindful of Sterling's contention that the guarantee should be read as mandating that Praxair agreed to guarantee "all of the obligations of PHS" and only a portion of them constituted the timely payment of certain monies. In other words, Sterling posited that in using the word "all" before "obligations" then followed by the word "including" when alluding to the payment of monies, there must have been other obligations guaranteed, and those obligations allegedly were no less expansive than any and every liability of PHS, irrespective of its source. This proposition, however, ignores the references to other provisions of the document. Again, those provisions are §1.3 and article 2. They, when combined with the complete wording of §1.1, evince that every obligation to be guaranteed is brought under the umbrella of the word "Agreements" as expressly defined by the parties. Having to strictly construe the agreement as a whole, we again are led to the conclusion that the duties imposed by the "Agreements" are the only duties Praxair guaranteed.