SUPPLEMENTAL PLURALITY OPINION ON REHEARING
CHARLES W. SEYMORE, Justice.
Appellee RGM’s Motion For Rehearing to this panel is overruled. We issue this *661 supplemental opinion in order to address certain questions raised by RGM regarding preservation of error and our review of the summary judgment evidence.
A. Preservation of Error
In its motion for rehearing, RGM contends the plurality ignored procedural requirements of Rule of Civil Procedure 166a(c) and erred by reversing a summary judgment based on an argument that was not raised either in the trial court or on appeal. Specifically, RGM contends T & S did not assert that the contract is ambiguous in the trial court, nor did it argue ambiguity as grounds for reversal in its initial appellate brief. However, the record on appeal does not support RGM’s contention.
First, we refer RGM to T & S’s Amended Third Supplemental Answer in which T & S asserted that the subcontract is ambiguous relative to incorporation of the General Conditions. Second, we note T & S’s “Reply to RGM’s Response to [T & S’s] Motion for Final Judgment & [T & S’s] Reply to RGM’s Response to [T & S’s] Motion for Summary Judgment” wherein T & S argued that the subcontract is ambiguous “as to incorporation of the modified General Conditions.”[1]
We further note that in its original appellate brief, T & S argued there are fact issues “concerning the extent to which the concrete work was to be exposed to public view, the resulting tolerance levels for irregularities, which varied with the level of exposure, and whether RGM’s finished work was within those tolerances.” The summary judgment evidence indicates that the parties had two distinct views regarding specifications for the concrete form-work in question before this suit was filed. Under this appellate record, a claim that fact issues exist regarding tolerance levels and “whether RGM’s finished work was within those tolerances” is, in essence, a contention that contract language has more than one possible meaning. Consequently, this court is required to review and interpret the entire contract, not just a specific section, in order to determine the existence of fact issues precluding summary judgment. In consideration of our standard of review concerning cross-motions for summary judgment, we conclude that T & S preserved error for appellate review regarding the existence of an ambiguity in the contract. See Tex. R.App. P. 38.9; see also Tex. Worker’s Comp. Comm’n v. Patient Advocates of Tex., 136 S.W.3d 643, 648 (Tex.2004) (“[W]hen both parties move for summary judgment ... the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented”).
B. Applicable Tolerance Issue
Regarding the fact issue on applicable tolerances for concrete surfaces, it is important to remember that RGM moved for summary judgment based on the contention that it had fully performed its obligations under the subcontract, seeking full payment. Therefore, RGM, as movant, had the burden to prove as a matter of law that it fully complied with the contract terms. T & S consistently disputed this fact, asserting that RGM’s work did not comply with certain terms in the subcontract, including Section 03300.
In the trial court, T & S did not specifically assert that the contract was ambiguous relative to the applicable tolerances for finish of concrete surfaces. However, T & S did argue that RGM failed to comply with the correct tolerances. Indeed, whether RGM complied with the contract terms, including specifications for concrete *662 surfaces, was the central issue in the case. Both parties argued that a different tolerance applied to RGM’s work and, of course, to resolve the issue the court must interpret contract terms pertaining to tolerances. In construing a contract, we begin by determining whether the contract is enforceable as written. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex.2003). In doing so, we cannot confíne our review to one section of the contract, as asserted by RGM. We must read the whole contract in an attempt to harmonize its provisions. Id.
RGM contends there is no fact issue relative to tolerance levels for finish of concrete formwork because T & S failed to rebut RGM’s summary judgment evidence that RGM had reduced all offsets of formed surfaces to one-quarter inch tolerance. Notably, RGM submitted the testimony of Bart Dansby, T & S’s project manager, as part of its summary judgment evidence and Dansby testified that the offsets were not within a quarter inch tolerance. Moreover, under ACI-347 — essentially the only authority relied upon by RGM to assert that the subcontract required a one-quarter inch tolerance— “formed surfaces” equates to the “finish of exposed concrete.” The parties do not dispute the fact that the concrete work at issue consists of formed surfaces of “exposed” or “exposed-to-view” concrete. In our plurality opinion, we acknowledged that “exposed-to-view” concrete is included in the definition of “Exposed Concrete” under Section 03100,1.03(B) of the subcontract. We further acknowledged the application of Section 03300, which addresses repairs to exposed-to-view formed concrete surfaces containing defects affecting the aesthetic appearance and finish of formed surfaces. In the trial court, the parties disputed whether part of the work rejected by architect Campbell was a Class A, B, or C surface, as prescribed in ACI-347. If some of the surfaces in question are Class A (exposed-to-view), a one-eighth inch tolerance is prescribed under ACI-347. RGM’s contention that there is no fact issue regarding tolerance levels because RGM’s concrete finish work was within one-quarter inch tolerance is not tenable. Finally, regarding Section 03300, RGM notably does not address why, although the subcontract specifically lists RGM’s work as including “cast-in-place” concrete, the specifications covering cast-in-place concrete — -that is, Section 03300 — do not apply to its work under the subcontract.
We acknowledge that this dispute over $12,564 worth of concrete construction work has been litigated far too long by parties who seem quite willing to accept the risk of a significantly disproportionate assessment of attorney’s fees and expenses. However, in reviewing the summary judgment evidence, we are guided by the supreme court’s admonition that all reasonable inferences should be indulged and all doubts resolved in favor of the losing party. Univ. of Tex. Health Sci. Ctr. v. Big Train Carpet Inc., 739 S.W.2d 792, 792 (Tex.1987). As stated in the plurality opinion, having reviewed the contract as a whole and all of the summary judgment evidence, the trial court’s summary judgment is reversed and the case remanded for further proceedings.[2]
*663 Finally, T & S’s motion for modification is denied. Our statement in footnote 1 of the plurality opinion shall not be construed as an interpretation or disposition of the rights and liabilities of the parties to the subject stipulation.

. Also, attached to RGM’s Motion for Final Summary Judgment was the sworn testimony of witness Kelly LaGrone who stated: “I think these documents are ambiguous.”

. Briefly, in response to the dissent's comments regarding the logic of our extra-compensation claim analysis, unfortunately the dissent misreads our analysis and interprets it in a vacuum, much like it has the provisions of the subcontract. True, we state in the plurality opinion that "extra-compensation" implies compensation beyond the contract price. Tribble & Stephens Co. v. RGM Constructors, L.P., No. 14-02-01062-CV, 2004 WL 2400983, at *17 (Tex.App.-Houston [14th Dist.] Oct. 28, 2004, no pet. h.). However, the problem with RGM’s argument concerning this term is not the meaning given to it, but RGM’s suggested point in time that we define it. Certainly, throughout this litiga *663 tion, RGM has sought the full contract price. Nevertheless, what RGM seeks in this litigation is not determinative of what obligations RGM may or may not have had under the terms of the subcontract. When paragraph 4.4 is read in conjunction with the other provisions of the subcontract, and specifically those set out in the plurality’s analysis of the issue, the characterization of the "claim” must be made with reference to the genesis of the parties' dispute. Here, the dispute between the parties arose when T & S notified RGM that Campbell had rejected its work. In its notice, T & S also advised RGM that the deficiencies were contrary to the subcontract specifications found in Section 03300. RGM subsequently met with Campbell, however, it unilaterally determined that the subcontract did not require the surface finishes requested by Campbell. RGM failed to advise either T & S or Campbell of its position and, ultimately, T & S hired another subcontractor to complete the work, invoicing RGM for that cost. RGM then demanded payment under the subcontract and filed this suit to obtain it. Thus, RGM’s contention is in fact that T & S wrongfully withheld the contract price because T & S wrongfully required RGM to perform work outside the scope of the subcontract. However, as noted in the plurality opinion, the terms of the subcontract reflect the parties' anticipation that the project may require adjustments or changes in the work and, to minimize disruptions in the work, a method for handling those anticipated changes was prescribed. Whether RGM had an obligation to present its “claim,” that is, its contention that it was being asked to perform work outside of the contract, can only be determined with reference to its scope of work under the subcontract. To conclude that RGM’s "claim” is not for “extra-compensation" merely because RGM seeks to be paid the contract price, does not give full effect to these applicable subcontract provisions. Finally, we note that the dissent’s discussion of "extra-compensation” adds nothing to the conclusion in the plurality opinion that RGM failed to establish it was entitled to judgment as a matter of law.