NO. 07-04-0555-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 17, 2005



______________________________




CHRISTOPHER ROBIN SCOTT, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 242ND DISTRICT COURT OF HALE COUNTY;



NO. B14418-0204; HONORABLE ED SELF, JUDGE



_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Pending before this Court is appellant Christopher Robin Scott's motion to dismiss
his appeal by which he represents he wishes to withdraw his notice of appeal. The motion
is personally signed by appellant as required by Rule 42.2(a) of the Texas Rules of
Appellate Procedure. No decision of this Court having been delivered to date, the motion
is granted. No motion for rehearing will be entertained and our mandate will issue forthwith. 

 Accordingly, the appeal is dismissed.

 Don H. Reavis

 Justice


Do not publish.

 



t.

 The controversy at bar arises from the alleged failure of Praxair Hydrogen Supply,
Inc. (PHS) to construct piping that complied with a designated standard. According to the
record, PHS and Sterling struck a deal under which the former agreed to build a particular
facility to sell items produced thereat to Sterling. Documents were signed memorializing
the accord. Furthermore, Praxair executed a guarantee assuring the performance and
payment of various duties of PHS. One of many issues below for the jury and trial court
to address involved whether the contractual duty upon which Sterling sued fell within the
scope of the guarantee. Both the trial court and jury said it did. Now we answer the same
question, and do so by concluding that it did not.

 Per §1.1 of the guarantee in question, Praxair obligated itself to:

 unconditionally and irrevocably guarantee . . . to Sterling the full, faithful and
timely performance of all of the obligations of PHS, including the full and
timely payment of any monies required to be paid by PHS under the Agreements (such performance and payment obligations being hereinafter

 collectively referred to herein as the "Obligations"), as and when same shall
become performable or due and payable according to the terms thereof, as
such Agreements may be modified from time to time by the parties.


(Emphasis added). The "Agreements" mentioned are defined in the guarantee. They
consist of a "Ground Lease Agreement, a Product Supply Agreement for the supply of
carbon monoxide, blend gas, hydrogen, and superheated steam, and a Utilities
Agreement." Yet, Sterling tells us that 

 the agreements that were found to have been breached by PHS . . . were not
found in the Ground Lease, the Product Supply Agreement, or the Utilities
Agreement, but were instead consistent prior or contemporaneous
agreements pertaining to the standards, quality, design and construction of
the piping and equipment that was to be installed in [the] gas plant.


Thus, the controversy before us concerns whether these "consistent prior and
contemporaneous agreements" fell within the borders of the guarantee. And, in resolving
the matter we take care to read the guarantee agreement as a whole, see J. M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003) (stating that contracts must be read as
a whole), and strictly construe it in favor of the guarantor, i.e. Praxair. See Reece v. First
State Bank of Denton, 566 S.W.2d 296, 297 (Tex. 1978). 

 As previously mentioned, the contract before us relates to Praxair's promise to
guarantee the performance and payment of certain items by PHS. Moreover, these duties
are identified as the "Obligations" which Praxair agreed to perform or pay "as and when
same shall become performable or due and payable according to the terms thereof, as
such Agreements may be modified . . . ." The last phrase is telling. By alluding to
performance and payment in accordance "to the terms thereof, as such Agreements may
be modified", one sees that the terms of performance and payment contemplated are
those defined by the original "Agreements" or their modifications. Simply put, the
obligations imposed upon PHS under the "Agreements" dictate the extent of Praxair's
liability. That this is true is buttressed by other provisions of the contract. 

 For instance, §1.3 of the accord describes Praxair's liability as "primary" and states
that if PHS was to "fail or refuse to perform or pay all or any of the Obligations . . . [the]
Guarantor agrees (i) to complete such performance as required under the Agreements
 . . . ." (Emphasis added). Additionally, under article two wherein the parties discuss the
"term" or duration of the guarantee, it is stated that the "Guaranty shall remain in full force
and effect until all Obligations of PHS under all of the Agreements guaranteed . . . are fully
and faithfully performed . . . ." (Emphasis added). Both provisions say nothing about
promises, contracts, duties, or the like of PHS other than those arising under the
"Agreements." So, we find but one reasonable interpretation of the guarantee, and it
equates the extent of Praxair's obligations as a guarantor to the duties of PHS as
established in the "Agreements." 

 Our having so interpreted the guarantee leads us to but one outcome. This
outcome is mandated by both the contractual definition ascribed by the parties to the word
"Agreements" and the undisputed fact that the contracts purportedly breached by PHS
"were not found in the Ground Lease, the Product Supply Agreement, or the Utilities
Agreement", i.e. the documents comprising the "Agreements." Simply put, the duties
allegedly breached by PHS fell outside the scope of Praxair's guarantee. (2) Thus, and as
a matter of law, it was not liable for their performance or payment. In concluding otherwise,
both the jury and trial court harmfully erred.

 We reverse the judgment of the trial court and render judgment denying Sterling
recovery against Praxair.

 

 Brian Quinn

 Chief Justice


Reavis, S.J., not participating.
1. Don Reavis, Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann.
§75.002(a)(1) (Vernon Supp. 2006). 
2. We are mindful of Sterling's contention that the guarantee should be read as mandating that Praxair
agreed to guarantee "all of the obligations of PHS" and only a portion of them constituted the timely payment
of certain monies. In other words, Sterling posited that in using the word "all" before "obligations" then
followed by the word "including" when alluding to the payment of monies, there must have been other
obligations guaranteed, and those obligations allegedly were no less expansive than any and every liability
of PHS, irrespective of its source. This proposition, however, ignores the references to other provisions of
the document. Again, those provisions are §1.3 and article 2. They, when combined with the complete
wording of §1.1, evince that every obligation to be guaranteed is brought under the umbrella of the word
"Agreements" as expressly defined by the parties. Having to strictly construe the agreement as a whole, we
again are led to the conclusion that the duties imposed by the "Agreements" are the only duties Praxair
guaranteed.