NUMBER
13-03-118-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

 

YATES ENERGY
CORPORATION, JALAPENO

CORPORATION, GARY
B. LAUGHLIN,

AND MOSBACHER USA,
INC.,                                                      Appellants,

 

                                                             v.

 

ENERQUEST OIL AND
GAS,L.L.C., HAVENYIELD

ENERGY, L.L.C.,
AND JUSTIN O=CONNOR,                                 Appellees.

 

 

                      On appeal from the 25th
District Court

                                       of
Gonzales County, Texas.

 

 

 

                                M E M O R A N D
U M   O P I N I O N

 

     Before Chief
Justice Valdez and Justices Rodriguez and Garza

      Opinion by Chief
Justice Valdez








Appellants, Yates Energy Corporation, Jalapeno
Corporation, Gary B. Laughlin, and Mosbacher USA, Inc. (collectively AYates@), appeal the trial court=s granting of a motion for summary judgment in favor
of appellees, Enerquest Oil & Gas, L.L.C., Havenyield Energy, L.L.C., and
Justin O=Connor (collectively AEnerquest@).  Because we
conclude there are material issues of fact still in dispute, we reverse and
remand.

Background

This dispute involves the Baker Gas Unit, an area of
approximately 631 acres located in Gonzales County, Texas.  Both Yates and Enerquest are working interest
owners of the Baker Unit, which currently has one operating gas well, the Baker
No. 1 Well.  Yates is also the operator
of the unit.  The rights and obligations
of all working interest owners are controlled by a Joint Operating Agreement
(JOA).  

The Baker No. 1 Well began experiencing production
problems in early 2000, and after some discussion among the working interest
owners, it was agreed that Yates would abandon its interest in the well in
favor of Enerquest.  This transfer of
interests was to be accomplished in accordance with the JOA, which provided
that in instances where some but not all of the parties wished to abandon a
well on the property, Athose wishing to continue its operation shall tender
to each of the other parties its proportionate share of the value of the
[well].@  Furthermore,
each abandoning party Ashall then assign to the non-abandoning parties . .
. all of its interest in the well and its equipment, together with its interest
in the leasehold estate. . . . The assignments so limited shall encompass the >drilling unit= upon which the well is located.@








The term Adrilling unit@ is described in the definitions section of the JOA
as Athe area fixed for the drilling of one well by order
or rule of any state or federal body having authority.@  The parties
agree that such a rule was promulgated by the Texas Railroad Commission in
1991:  AThe
standard drilling and proration units are established hereby to be six hundred
forty (640) acres . . . .  An operator,
at his option, shall be permitted to form optional drilling units of three
hundred twenty (320) acres.@  

During Yates=s abandonment of the Baker No. 1 Well, a dispute
arose as to what constituted the well=s applicable Adrilling unit.@  Yates argued
that as operator of the well, it could set the drilling unit at 320 acres.   Enerquest asserted that because there had
always only been one well on the property, the drilling unit was clearly the
entire acreage of the property.  The two
parties entered an agreement as to the transfer of 320 acres in which they
reserved their rights to pursue legal remedies with regard to the remaining
acres in dispute.  Enerquest then sued
Yates for breach of contract, requesting specific performance by Yates and the
conveyance of the remaining 311 acres in the Baker Unit.  Both parties moved for summary judgment, and
the trial court denied Yates=s motion and granted Enerquest=s motion, directing Yates to abandon its interests
in the remaining 311 acres.  

On appeal, Yates argues that the trial court erred
in (1) failing to rule that disputed issues of material fact prevented the
granting of Enerquest=s summary judgment motion, (2) failing to rule that
Enerquest had already received all the acreage to which it was entitled, and
(3) failing to grant Yates=s motion for summary judgment.  

Analysis








The movant for summary judgment has the burden of
showing that there is no genuine issue of material fact, and that it is
entitled to judgment as a matter of law.  See Nixon v. Mr. Property Management Co.,
690 S.W.2d 546, 548 (Tex. 1985).  In
deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the nonmovant will be taken as true. See id.
at 548‑49.  When both sides move
for summary judgment and the trial court grants one motion and denies the
other, we must consider both motions, their evidence, and their issues and may
render the judgment that the trial court should have rendered.  See CU Lloyd's of Tex. v. Feldman, 977
S.W.2d 568, 569 (Tex. 1998). 

In construing a contract, we must ascertain and give
effect to the parties= intentions as expressed in the document.  J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003). To achieve this objective, we must examine and
consider the entire writing in an effort to harmonize and give effect to all
the provisions of the contract so that none will be rendered meaningless.  Id.  No single provision taken alone will be given
controlling effect; rather, all the provisions must be considered with
reference to the whole instrument.  Id.
If, after the pertinent rules of construction are applied, the contract can
be given a definite or certain legal meaning, it is unambiguous and we construe
it as a matter of law.  Id.

Both parties focus the majority of their arguments
on whether the JOA provision regarding drilling units, and hence the Railroad Commission
rule referenced by the JOA, establish 320 acres as an allowable drilling unit
size in the Baker Unit.   We have
reviewed the relevant documents and conclude that the Railroad Commission rule,
as quoted above, expressly provides for the possibility of a 320-acre drilling
unit, and that this rule was intended by the authors of the JOA to be
incorporated into the agreement.  Thus,
the JOA may be properly interpreted as allowing for drilling unit to
potentially be either 640 acres or 320 acres. 








Enerquest argues that because the JOA uses the
language Athe area fixed for the drilling of one well
by order or rule of any state or federal body having authority,@ there can only be a single established size for
drilling units.  AFixed@ is defined as Aestablished@ or Asettled.@ See Webster=s New World Dictionary, 3rd College ed. (1988).  With this definition in mind, we conclude it
is reasonable to interpret the JOA as allowing for the establishment of two
alternative drilling unit sizes as set by the Railroad Commission.

Given that the drilling unit could have properly
been either 640 acres or 320 acres under the JOA, we turn now to the question
of which of the two drilling unit sizes had been established in the Baker
Unit.  As mentioned above, the 640-acre
unit was considered the Astandard@ drilling unit size, and the 320-acre drilling unit
could only be established by Aan operator, at his option.@   Yates, the
operator of the well, insists that in its communications with Enerquest
regarding the abandonment of Baker No. 1 Well, it had exercised this option and
thereby established the drilling unit at 320 acres.   Enerquest, however, insists that because
Yates had operated only one well on the entire property, it had never
established a smaller drilling unit, and therefore never availed itself of the
opportunity to establish a 320-acre drilling unit.  

The railroad commission order fails to specify how
an operator is to exercise his option of forming the optional 320 acre drilling
unit, and both parties dispute how or whether this was done.  This raises an as-yet unresolved issue of
material fact that would be properly determined by a jury or fact-finder.  See Nixon, 690 S.W.2d at 548.   Accordingly, we conclude that the trial
court erred in granting summary judgment in favor of Enerquest.  and we affirm Yates=s first issue on appeal.[1]









Conclusion

We reverse the judgment of the trial court and
remand the cause for trial on the merits.                       

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

 

Memorandum Opinion delivered and filed

this 30th day of June, 2005.











[1]For the same reasons, it would also
be improper for the trial court to grant Yates=s cross-motion for summary judgment
or rule that Enerquest had already received all the land to which it was
entitled.  Therefore, we do not need to
further address Yates=s remaining issues on appeal.  See Tex.
R. App. P. 47.1.