Opinion filed November 2, 2006















 
 
  
 
 







 
 
  
 
 




Opinion filed November 2, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

                                                          No. 11-06-00181-CV 

                                                     __________

 

                            IN RE
CHAMPION TECHNOLOGIES, INC. 

                                AND
PERMIAN MUD SERVICE, INC. 

 



 

                                                Original
Mandamus Proceeding

 



 

                                                                   O
P I N I O N

 

This mandamus proceeding concerns the enforcement
of an arbitration agreement.   Relators,
Champion Technologies, Inc. (Champion) and Permian Mud Service, Inc. (Permian),
filed a motion to compel arbitration that the trial court denied.  They seek an order from this court directing
the trial court to refer the underlying proceedings to arbitration.  Their petition for writ of mandamus is
conditionally granted in part and denied in part.

                                                               Background
Facts

Real parties in interest Burl Fuller, Danny
Alexander, and Billy York are former employees of Champion.  They filed a wrongful termination action
against Champion and Permian on June 12, 2004.[1]  Relators filed a motion to compel arbitration
on October 14, 2004, alleging that the claims were subject to a written
arbitration agreement.  The relevant
documents refer to the arbitration agreement at issue as the AChampion Technologies Dispute
Resolution Program@
(Program).








The trial court initially deferred ruling on the
motion to compel arbitration until after the completion of discovery.  Relators filed a previous mandamus proceeding
in this court and a writ was conditionally granted directing the trial court to
rule on the motion.  In re Champion
Techs., Inc., 173 S.W.3d 595 (Tex. App.CEastland
2005, orig. proceeding).   This mandamus
proceeding arises from the trial court=s
order entered in compliance with our previous directive.

The trial court detailed its basis for denying
relators= motion
to compel arbitration in a lengthy written order.  The trial court concluded that the Program
was unenforceable on the basis that it constituted an illusory contract.  The trial court also determined that one of
the claims asserted by York
was not covered by the scope of the Program. 
Relators attack these determinations in two issues.

                                                              Standard
of Review

Relators sought to compel arbitration under the
provisions of the Federal Arbitration Act (FAA).  See 9 U.S.C. ''
1‑16.[2]  A party seeking to compel arbitration under
the FAA must establish that  (1) there is
a valid arbitration agreement and (2) the claims raised fall within that agreement=s scope. In re Dillard Dep=t Stores, Inc., 186 S.W.3d 514, 515
(Tex. 2006)
(orig. proceeding). Mandamus relief is available when a trial court erroneously
denies a motion to compel arbitration under the FAA.  Id.  








We review orders compelling or denying arbitration
under the FAA under an abuse of discretion standard.  Jack B. Anglin Co. v. Tipps, 842
S.W.2d 266, 271 (Tex.
1992) (orig. proceeding).  A trial court
abuses its discretion if it acts without reference to any guiding rules or
principles or acts in an arbitrary or unreasonable manner. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex. 1985). 
When reviewing matters committed to a trial court=s
discretion, an appellate court may not substitute its own judgment for the
trial court=s
judgment.   Walker
v. Packer, 827 S.W.2d 833, 839 (Tex.
1992).  Nor may a reviewing court set
aside the trial court=s
determination unless it is clear from the record that the trial court could
only reach one decision.  Id. at
840. Our review of a trial court=s
determination of the legal principles controlling its ruling is much less
deferential.  Id. 
A trial court has no discretion in determining what the law is or
applying the law to the facts.  Id.  Thus, a clear failure by the trial court to
analyze or apply the law correctly will constitute an abuse of discretion.  Id.

                                                                Illusory
Contract

In their first issue, relators assert that the
trial court abused its discretion by determining that the Program is
illusory.  The validity of an arbitration
agreement is determined by contract law. In re Kellogg Brown & Root,
Inc., 166 S.W.3d 732, 737 (Tex.
2005) (orig. proceeding).  The trial
court=s
determination of an arbitration agreement=s
validity is a question of law.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003).  


An illusory promise of performance invalidates a
bilateral contract.  Light v. Centel
Cellular Co. of Tex., 883 S.W.2d 642, 645
(Tex. 1994), modified by Alex Sheshunoff
Mgmt. Servs, v. Johnson, 50 Tex.
Sup. Ct. J. 44, 2006 WL 2997287 (Tex.
Oct. 20, 2006).[3]
A promise is illusory when it fails to bind the promisor who retains the option
of discontinuing performance.  Id.   In the context of a stand-alone arbitration
agreement, binding promises to arbitrate are required of both parties in order
for the requirement of consideration to be met. 
In re AdvancePCS Health L.P., 172 S.W.3d 603, 607 (Tex. 2005) (orig.
proceeding).  An arbitration agreement
may be illusory if a party can unilaterally avoid the agreement to
arbitrate.  In re Palm Harbor Homes,
Inc., 195 S.W.3d 672, 677 (Tex. 2006)
(orig. proceeding); J.M. Davidson, Inc., 128 S.W.3d at 228-30; In re
Halliburton Co., 80 S.W.3d 566, 569-70 (Tex. 2002) (orig. proceeding).  Accordingly, the terms of the Program must be
analyzed to determine if Champion has the unfettered right to avoid its promise
to arbitrate.   Prior to conducting this
analysis, we note that Champion has not made any changes to the Program since
its inception.  To the contrary, Champion
requests that this matter be arbitrated in accordance with the original terms
of the Program.

The trial court based its determination that the
Program is illusory on the AAmendment@ and ATermination@ sections of the Program.  These sections provide as follows:

6.         AMENDMENT

 

This
Program may be amended by [Champion] at any time by giving at least 30 days= notice to current Employees. However,
no amendment shall apply to a Dispute for which a proceeding has been initiated
pursuant to the Rules, unless otherwise agreed.

 








[Champion]
may amend the Rules at any time by serving notice of the amendment on AAA.  However, no amendment of the Rules shall
apply to a Dispute for which a proceeding has been initiated pursuant to the
Rules, unless otherwise agreed.  

 

            7.         TERMINATION

 

This
Program may be terminated by [Champion] at any time by giving at least 30 days= notice of termination to current
Employees.  However, termination shall
not be effective as to Disputes for which a proceeding has been initiated
pursuant to the Rules prior to the date of termination unless otherwise agreed.

 

The Amendment section consists of two
provisions.  The first provision governs
Champion=s right
to amend the Program.  The
second provision of the Amendment section deals with Champion=s authority to amend the ARules.@  The
ARules@ are a separate section of the Program that
governs the process for conducting an arbitration under the Program.  The Rules cover such areas as the method for
initiating the arbitration, the appointment of the arbitrator, the date and
location for the arbitration, the applicable discovery procedures, and the
evidentiary rules for the arbitration.  

The first provision of the Amendment section is
similar to the single Termination provision.  
Accordingly, we will analyze the first provision of the Amendment
section and the sole Termination provision together.  These provisions are made up of two
sentences.  The first sentence provides
that Champion can amend or terminate the Program by providing at least thirty
days= notice
to current employees.  The second
sentence prohibits Champion from amending or terminating the Program with
respect to an arbitration proceeding that has been initiated prior to the date
of amendment or termination.  These two
sentences contain language that is similar to the arbitration agreement
reviewed by the supreme court in Halliburton.  








The termination provision in Halliburton
provided that Atermination
shall not be effective until 10 days after reasonable notice of termination is
given to Employees or as to Disputes which arose prior to the date of
termination.@  80 S.W.3d at 569-70.   The amendment provision in Halliburton
provided that Ano
amendment shall apply to a Dispute of which the Sponsor had actual notice on
the date of amendment.@  Id.  The court concluded that these provisions
were not illusory because Halliburton could not have avoided its promise to
arbitrate by amending the provision or terminating it altogether.  Id.  The court expounded its holding in Halliburton
in its subsequent opinion in  J.M.
Davidson, Inc.  128 S.W.3d at
228-30.  The court stated that it upheld
the provisions in Halliburton because amendments to the arbitration
agreement only applied prospectively to unknown claims and termination required
notice and applied to both parties=
rights.  Id. at 228.

The real parties in interest contend that Halliburton
is distinguishable.  They base this
contention on their status as former employees and their construction of the
first and second sentences of the provisions at issue.  The second sentences provide that Champion
cannot unilaterally amend or terminate the Program after an arbitration has
been initiated under the Program.  The
real parties in interest contend that, as former employees, these sentences do
not apply to them.  They base this
argument on the fact that the Afirst@ sentences which precede these
sentences only require Champion to notify current employees of an amendment or
termination of the Program.  We disagree
with this interpretation.  In construing
a written contract, the primary concern of the court is to ascertain the true
intentions of the parties as expressed in the instrument.  See J.M. Davidson, Inc., 128 S.W.3d at
229.  No single provision taken alone
will be given controlling effect; rather, all the provisions must be considered
with reference to the whole instrument.  Id.  The succeeding sentences are not dependent
upon the preceding sentences for their meaning or effect.  They contain terms which apply universally to
both current and former employees:

However, no amendment shall apply to a Dispute for which a
proceeding has been initiated pursuant to the Rules, unless otherwise agreed.

 

However, termination shall not be effective as to Disputes for
which a proceeding has been initiated pursuant to the Rules prior to the date
of termination unless otherwise agreed.

 

The second provision of the Amendment section pertaining to the
amendment of the ARules@ also contains a similarly worded
sentence that provides: AHowever,
no amendment of the Rules shall apply to a Dispute for which a proceeding has
been initiated pursuant to the Rules, unless otherwise agreed.@ 









We conclude that Champion does not have the
contractual right to amend or terminate the Program itself or the ARules@
after an arbitration is initiated under the Program with respect to a dispute
involving former employees.  This
determination is significant to our analysis because it establishes that
changes to the Program would only have a prospective effect.  As the aggrieved parties, the real parties in
interest were required by the terms of the Program to initiate arbitration in
order to present their disputes for resolution. 
If they had done so, Champion could not have avoided its promise to
arbitrate by either amending or terminating the Program itself or the ARules.@  The Texas Supreme Court addressed an
analogous situation in AdvancePCS Health wherein the court stated: AHad the pharmacies invoked arbitration
rather than filing suit, PCS could not have avoided arbitration by terminating
the Provider Agreement.  Thus, the clause
was not illusory.@ 172
S.W.3d at 607-08.  

Furthermore, the omission of former employees from
the class of persons to be notified of changes does not render the Program
illusory.  The real parties in interest
were current employees of Champion when the Program was instituted.[4]  Accordingly, there was an initial thirty-day
period during which Champion could not have amended or terminated the Program
with respect to the real parties in interest. 
The existence of this initial thirty-day window of protection negates
the illusory promise contention of the real parties in interest.  AdvancePCS Health, 172 S.W.3d at 607
(citing the ten-day window of protection in Halliburton).  Moreover, this initial thirty-day window
continued to exist until thirty days following the date that Champion notified
the real parties in interest of their termination from employment.[5]  Any subsequent attempt by Champion to amend
or terminate the Program without notifying the real parties in interest would
be ineffectual to change the terms of the Program.  In re Dillard Dep=t Stores, Inc., 198 S.W.3d 778, 782
(Tex. 2006)
(orig. proceeding) (citing Halliburton for the proposition that a change
in employment terms does not affect employees who do not receive notice of the
changes and accept them).








With respect to the notice element of the ARules@
amendment provision, the provision appears to provide that Champion can amend
the Rules at any time without providing any class of employees with notice of
the change.  Relators assert that that
provision is of no consequence because the Rules of the Program provide that
the AEmployment
Dispute Resolution Rules@
of the American Arbitration Association (AAA) apply to arbitrations initiated
under the Program.  Relators cite a
provision of the current version of these rules which provides as follows: AIf a party establishes that an adverse
material inconsistency exists between the arbitration agreement and these
rules, the arbitrator shall apply these rules.@[6]  Accordingly, Champion cannot avoid its
promise to arbitrate by amending the Rules because the rules of the AAA would
nullify the offending amendments.  

Finally, we must address an external provision
cited by the real parties in interest in support of their illusory promise
contention.  Champion presented the
Program to its employees in a three-part booklet that also contained Champion=s ACode
of Conduct@ and AWorkplace Rules.@  One of the provisions contained in the
Workplace Rules provides that AChampion
reserves the right to amend, alter and terminate policies and procedures at any
time.@  The real parties in interest assert that this
provision grants Champion the unfettered right to modify or terminate the terms
of the  Program.  We disagree. 
A page entitled AAcknowledgement
of Receipt and Agreement@
accom-panied the Program.  Each of the
real parties in interest acknowledged their receipt of the Program by signing
this page.  The acknowledgment page
contains the following statement: 

I
further recognize that Champion may amend, change, or terminate the Program only
in accordance with Paragraphs 6 and 7 of the Program and that policies,
provisions, or statements contained in any document other than the Program,
which address Champion=s
right to amend, change, or terminate policies, procedures, or programs, shall
not apply to the Program.

 

This provision expressly prohibits Champion from relying on a
provision of the Workplace Rules to amend or terminate the Program.  

We conclude that the trial court=s interpretation of the Program=s Amendment and Termination sections is
erroneous because Champion could not have avoided its promise to arbitrate the
claims asserted by the real parties in interest.  Relators=
first issue is sustained.

                                                  York=s Tortious Interference Claim








Relators=
second issue addresses the trial court=s
determination that York=s claim against them for tortious
inference with a contractual relationship falls outside the scope of the
Program.  York became employed by United Energy after
being terminated by Champion.  He
contends that Champion caused him to be terminated by United Energy by
threatening a third party with whom both Champion and United Energy had storage
space that Champion would  cease using
the third party=s storage
facility if York continued to work for United Energy.

Relators contend that the Program broadly defines
the disputes that are covered by the Program and that York=s
tortious interference claim is included within the definition because it is a
claim that arose subsequent to his receipt of the Program.  Under Relators=
interpretation of the Program, any claim that may subsequently arise between
them and York would be subject to the Program. 
We agree that the Program=s
description of the subject disputes is comprehensive. However, the terms of the
Program begin with the following statement under the heading of APurpose and Construction@:

The
Program is designed to provide a means for the quick, fair, accessible, and inexpensive
resolution of Disputes between the Company and the Company=s present and former Employees and
Applicants for employment, related to or arising out of a current, former or
potential employment relationship with the Company.  (emphasis added)

 

The connection between York=s previous employment relationship with
Relators and his claim that they later interfered with his subsequent
employment relationship with a third party is tenuous and coincidental.  We conclude that the trial court did not
abuse its discretion in determining that the tortious interference claim falls
outside of the scope of the Program. 
Relators= second
issue is overruled.

                                                               This
Court=s Ruling

Fuller=s
motion to strike materials filed by Relators is overruled.  Relators=
petition for writ of mandamus is denied with respect to York=s
claim for tortious interference with his subsequent employment relationship
with United Energy.  With respect to the
remaining claims, we conditionally grant a writ of mandamus.  The trial court is directed to vacate its AOrder on Defendants= Motions to Compel@ and to enter a new order compelling
arbitration of the remaining claims.  In
the event that the order is not entered by December 4, 2006, writ of mandamus
will issue.

 

 

November
2, 2006                                                                   TERRY
McCALL

Panel consists of:  Wright, C.J., and                                          JUSTICE

McCall,
J., and Strange, J.











[1]Real parties in interest allege that Permian is the
parent company of Champion.  They seek to
impose joint and several liability against Permian for Champion=s acts.  





[2]The arbitration agreement at issue provides that the
provisions of the FAA are to govern its application.





[3]Disagreeing with a statement it made in Light,
the court in Sheshunoff held that a unilateral contract that is illusory
when made can become enforceable under the Covenants Not to Compete Act, Tex. Bus. & Com. Code Ann. '' 15.50-.52 (Vernon 2002), when the employer performs a
promise.  For the reasons we will
discuss, the agreement in this case was not illusory at the time it was made.





[4]The real parties in interest acknowledged receipt of
the Program on May 21, 2003.





[5]The real parties in interest were notified of their
termination by Champion in letters dated January 22, 2004.





[6]The current version of the AAA=s employment dispute resolution rules are entitled AEmployment Arbitration Rules and Mediation Procedures.@  They became
effective on July 1, 2006.  The previous
version of these rules contains the same provision.  Relators attached a copy of these new rules
to their reply to Fuller=s response to the petition for writ of mandamus.  Fuller has filed a motion to strike this
attachment as a part of the record in this mandamus proceeding on the ground
that these rules were not filed with the trial court.  This motion is overruled.  The Program incorporates the rules of the AAA
as a part of its terms.  The rules and
procedures of the AAA are readily available via the internet.  Relators= act of
providing a copy of these rules to the court is similar to a party attaching a
copy of a statute or regulation for the court=s
benefit.