TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00219-CV






Senna Hills, Ltd. and HBH Development Company, LLC, Appellants


v.


Sonterra Energy Corporation, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NOS. D-1-GN-05-001625 & D-1-GN-05-001526 

HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING





D I S S E N T I N G O P I N I O N


 I, too, believe that the language of the Propane Service Agreements is unambiguous
and can be given a definite legal meaning. However, I believe that the trial court's reading of the
contractual language was correct and disagree with the majority's interpretation of the Agreements. 
Therefore, I respectfully dissent from the majority's opinion.

 Both Agreements have the following relevant provisions:



 The paragraph titled "Easement Use Fee," which states,
"Except as provided below, Developer's right to receive an
Easement Use Fee shall continue for so long as the Propane
System is a propane system and the Propane System is owned
by Southern Union," and 
 The paragraph titled "Assignments," which provides,
"Southern Union shall have the right to transfer and assign, in
whole or in part, all and every feature of its rights and
obligations under this Letter Agreement and in the Propane
System . . . . In such event, Southern Union shall be released
from any further obligation under this Letter Agreement and
Developer agrees to look solely to Southern Union's
successor for the performance of such obligations."



Significantly, the January 1997 Agreement also has two other paragraphs that touch on or address
the Easement Use Fees. Under Paragraph 6, titled "Developer Bonus," the Developers have the
right to receive a "Developer's Bonus" if the system was converted to a natural gas system or if
Southern Union sold the system to an unaffiliated company. Under paragraph 7, titled "Right to
Continue to Receive Easement Use Fee," if following a system conversion the Developers did
not notify Southern Union that they were electing to receive a Developer's Bonus, the Developers
had the right to continue receiving Easement Use Fees for two years after the conversion, fees
that otherwise would have ceased upon the conversion of the system to something other than a
propane system.

 Ignoring the clear and unambiguous language of the "Easement Use Fee" paragraphs,
which condition the Developers' right to receive the fee upon Southern Union's ownership of the
system, the majority determines that the Assignments paragraphs should be read as transferring
Southern Union's obligation to pay Easement Use Fees to Southern Union's successor. What the
majority fails to recognize or address is that the relevant portions of the Agreements do not speak
in terms of Southern Union's obligation to pay the fees. The Agreements provide instead that
the Developers' right to receive the payments continued only for so long as Southern Union owned
the system. Thus, when Southern Union sold the system to ONEOK in 2003, the Developers no
longer had the right to look to anyone for payment of the fees. In other words, the Agreements
unambiguously provided that upon Southern Union's sale of the system, the "Developer's right to
receive an Easement Use Fee" ceased and was not assigned to Southern Union's successor.

 The majority, while it does not expressly say so, apparently attaches significance to
the phrase "[e]xcept as provided below," for it is only through reference to this qualifying phrase
that it may overlook the plain language terminating the Developers' right to receive the easement use
fee upon the sale of the system. I do not, however, read the "[e]xcept as provided below" portion of
the Easement Use Fees paragraphs as referring to the Assignment paragraphs. Instead, I believe
that "[e]xcept as provided below" is general boilerplate language and essentially surplusage unless
the parties supplied additional terms and conditions related to the fees, as they did in the January
1997 Agreement, wherein paragraphs 6 and 7 provide circumstances under which the Developers'
right to receive the fees could continue for another two years rather than terminating if Southern
Union converted the system to natural gas. (1)

 While the Assignment provisions do state that Southern Union would require its
successor to assume Southern Union's contractual obligations, the Easement Use Fees paragraphs
plainly state that Southern Union's obligation to pay the fees and, more importantly, the Developers'
"right to receive" the fees terminated once the system was sold to an unaffiliated company. The
Assignment paragraphs would not, therefore, transfer an obligation to pay the fees to the system's
purchaser simply because the purchase would have ended the Developers' right to receive such fees.

 I would hold that the plain language of the Agreements provides that the
Developers no longer had a right to receive the Easement Use Fees once Southern Union sold the
system to ONEOK. The language is clear, definite, and unambiguous, and under my reading of
the Agreements, it is possible to enforce the contracts exactly as written, without disregarding,
overlooking, or finessing any of the contractual provisions. See J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 229 (Tex. 2003). Because I disagree with the majority's conclusion that the
obligation to pay the fees survived the sale and was assigned to Southern Union's successors along
with Southern Union's other contractual obligations, I respectfully dissent.


 __________________________________________

 David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Filed: July 3, 2009
1. Notably, the September 1998 Austin's Colony contract makes no provision for a
continuation of the fees beyond the sale or conversion of the system.