# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00219-CV

**Senna Hills, Ltd. and HBH Development Company, LLC, Appellants**

**v.**

**Sonterra Energy Corporation, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NOS. D-1-GN-05-001625 & D-1-GN-05-001526
### HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

We withdraw our opinion and judgment dated July 3, 2009, and substitute the following in its place.

I, too, believe that the language of the Propane Service Agreements is unambiguous and can be given a definite legal meaning. However, I believe that the trial court's reading of the contractual language was correct and disagree with the majority's interpretation of the Agreements. Therefore, I respectfully dissent from the majority's opinion.

Both Agreements have the following relevant provisions:

- The paragraph titled "Easement Use Fee," which states, "Except as provided below, Developer's right to receive an Easement Use Fee shall continue for so long as the Propane

System is a propane system and the Propane System is owned by Southern Union," and

- The paragraph titled "Assignments," which provides, "Southern Union shall have the right to transfer and assign, in whole or in part, all and every feature of its rights and obligations under this Letter Agreement and in the Propane System . . . . In such event, Southern Union shall be released from any further obligation under this Letter Agreement and Developer agrees to look solely to Southern Union's successor for the performance of such obligations."

Significantly, the January 1997 Agreement also has two other paragraphs that touch on or address the Easement Use Fees. Under Paragraph 6, titled "Developer Bonus," the Developers have the right to receive a "Developer's Bonus" if the system was converted to a natural gas system or if Southern Union sold the system to an unaffiliated company. Under paragraph 7, titled "Right to Continue to Receive Easement Use Fee," if following a system conversion the Developers did not notify Southern Union that they were electing to receive a Developer's Bonus, the Developers had the right to continue receiving Easement Use Fees for two years after the conversion, fees that otherwise would have ceased upon the conversion of the system to something other than a propane system.

Ignoring the clear and unambiguous language of the "Easement Use Fee" paragraphs, which condition the Developers' right to receive the fee upon Southern Union's ownership of the system, the majority determines that the Assignments paragraphs should be read as transferring Southern Union's obligation to pay Easement Use Fees to Southern Union's successor. What the majority fails to recognize or address is that the relevant portions of the Agreements do not speak in terms of Southern Union's *obligation to pay* the fees. The Agreements provide instead that

2

the Developers' *right to receive* the payments continued only for so long as Southern Union owned the system. Thus, when Southern Union sold the system to ONEOK in 2003, the Developers no longer had the right to look to anyone for payment of the fees. In other words, the Agreements unambiguously provided that upon Southern Union's sale of the system, the "Developer's right to receive an Easement Use Fee" ceased and was not assigned to Southern Union's successor.

The majority, while it does not expressly say so, apparently attaches significance to the phrase "[e]xcept as provided below," for it is only through reference to this qualifying phrase that it may overlook the plain language terminating the Developers' right to receive the easement use fee upon the sale of the system. I do not, however, read the "[e]xcept as provided below" portion of the Easement Use Fees paragraphs as referring to the Assignment paragraphs. Instead, I believe that "[e]xcept as provided below" is general boilerplate language and essentially surplusage unless the parties supplied additional terms and conditions related to the fees, as they did in the January 1997 Agreement, wherein paragraphs 6 and 7 provide circumstances under which the Developers' right to receive the fees could continue for another two years rather than terminating if Southern Union converted the system to natural gas.[1]

While the Assignment provisions do state that Southern Union would require its successor to assume Southern Union's contractual obligations, the Easement Use Fees paragraphs plainly state that Southern Union's obligation to pay the fees and, more importantly, the Developers' "right to receive" the fees terminated once the system was sold to an unaffiliated company. The

---

[1] Notably, the September 1998 Austin's Colony contract makes no provision for a continuation of the fees beyond the sale or conversion of the system.

Assignment paragraphs would not, therefore, transfer an obligation to pay the fees to the system's purchaser simply because the purchase would have ended the Developers' right to receive such fees.

I would hold that the plain language of the Agreements provides that the Developers no longer had a right to receive the Easement Use Fees once Southern Union sold the system to ONEOK. The language is clear, definite, and unambiguous, and under my reading of the Agreements, it is possible to enforce the contracts exactly as written, without disregarding, overlooking, or finessing any of the contractual provisions. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Because I disagree with the majority's conclusion that the obligation to pay the fees survived the sale and was assigned to Southern Union's successors along with Southern Union's other contractual obligations, I respectfully dissent.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Filed: January 15, 2010

4