**Affirmed and Opinion Filed August 26, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01485-CV

### DANIEL K. HAGOOD, P.C. AND FITZPATRICK HAGOOD SMITH AND UHL, LLP, Appellants
### V.
### KUNAL KAPAI, Appellee

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-18-04027-D**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Nowell

This is an interlocutory appeal from an order denying a motion to compel arbitration. The issue in this appeal is the scope of an arbitration provision in an engagement agreement between an attorney and his client. The trial court determined the fees sought by the attorney were for services that were not rendered under the engagement agreement and did not fall within the scope of the arbitration provision. We conclude the trial court did not abuse its discretion and affirm.

### BACKGROUND

Daniel K. Hagood, P.C. and Fitzpatrick Hagood Smith and Uhl, LLP, (collectively Hagood) sued Kunal Kapai to recover unpaid attorney's fees and sought to compel arbitration under the terms of an engagement letter with Kapai. Hagood alleged claims for breach of contract and quantum meruit. Kapai contends the services for which Hagood is seeking fees are excluded

from the engagement agreement and not within the scope of the arbitration provision in that agreement.

In 2014, Kapai was involved in civil litigation with his former employer, GTL. He was represented by attorneys Lee Cameron and John Coutilish in the civil litigation. It was alleged that after Kapai was discharged from the company, he took some GTL checks and cashed them for himself. GTL alleged that Kapai committed theft by deception and forgery. In early May 2014, Frisco police contacted Kapai for an interview. Hagood's billing records indicate Cameron contacted Hagood on May 9, 2014 and Kapai met with Hagood later that day. Kapai and Hagood signed an engagement letter relating to the potential police questioning.

The engagement letter (Agreement) is dated May 9, 2014. In relevant part, it provides:

**1.      Scope of the Engagement**. The Client hereby retains the Firm to provide legal representation with regard to a potential questioning of client by the [Frisco], Texas Police Department and related matters.

. . . .

**8.      Arbitration of Disputes**. Any disputes regarding the Firm's services will be resolved by binding arbitration in Dallas, Texas by an arbitrator mutually agreed on. If there is a dispute and no mutual agreement is reached as to an arbitrator, the arbitrator will be appointed by a sitting Judge in Dallas County, Texas.

. . . .

**11.      Entire Agreement**. This Agreement contains the entire agreement between the Firm and the Client. No promise, representation, or warranty has been made by any of the parties, except as expressly stated in this Agreement. This Agreement does not include representation for any other criminal, administrative, civil, or appeal matter.

Kapai stated in his affidavit that during Hagood's representation, Kapai advised Hagood that Cameron and Coutilish represented him in what became five civil and bankruptcy cases where Kapai and GTL were parties.[1] Kapai stated he retained Hagood to represent him in connection with

---

[1] The record is not clear when these cases were filed. However, at least one civil case was pending at the time of the engagement letter.

the police interview. He did not retain Hagood to represent him on any other criminal, administrative, civil, or appeal matter. In June 2014, Kapai, Hagood, and Cameron determined that Kapai would not give an interview to police. Kapai considered Hagood's representation pursuant to the Agreement ended at that time. Kapai reviewed Hagood's billing records and stated they were consistent with his recollection that all legal services relating to the potential police questioning ended in June 2014. Kapai stated the legal services rendered after June 2014 related to other criminal, administrative, civil, or litigation matters. Kapai also stated that only a few of the documents in the client file he received from Hagood related to the potential police questioning. The remaining documents related to the other civil, bankruptcy, and litigation matters in which he was represented by Cameron.

Hagood testified that all services rendered by his firm were related to the original criminal investigation for which Kapai retained him. He denied representing Kapai in any other criminal, administrative, civil, or appeal matter. Hagood testified the civil litigation referenced in his billing statements "surrounded the criminal matter in large measure." Hagood worked to make sure the civil settlement did not include language that could impact the criminal case. He also worked to prepare Kapai for a civil deposition in order to avoid any criminal issues. His role was to make sure nothing in the civil cases would cause criminal trouble for Kapai.

Hagood introduced his billing statements for the work performed for Kapai. Those statements indicate that in May 2014, Hagood communicated with the Frisco Police Department and a Detective Corki, conferred with Cameron and Coutilish, reviewed documents, and met with the client and others. Hagood also reviewed Texas Workforce Commission documents. In June, Hagood had conferences regarding documents requested from Kapai, advised Kapai of a telephone call from Detective Corki, and conferred with Coutilish regarding a request for documents. In July, Hagood reviewed documents and an e-mail from Coutilish. Hagood billed Kapai for over ten hours

in May 2014, another two hours in June, and about an hour total for July and August. The billing records indicate Kapai paid most, if not all, of the fees through June 30, 2014.[2]

Hagood's activity increased in October and November 2014 in connection with preparation for Kapai's deposition in the civil litigation. After November 2014, Hagood recorded no billable time until March 2015, when he reviewed an e-mail from Cameron about GTL filing for bankruptcy and a possible deposition for Kapai. From March through October 2015, Hagood recorded time entries regarding a variety of topics including: GTL filing for bankruptcy; R204 motion in bankruptcy court; conferences with Cameron re case status and update; client testifying at creditors committee hearing; R204 deposition; non-disparagement order of bankruptcy court; documents in client's possession; possible threats to client's family in India; new lawsuit filed against client in federal bankruptcy court; whistleblower issues; review petition of Lee Cameron; fake e-mails that libel client; serving GTL India executives on U.S. soil; review third party counterclaim; murdered GTL student; settlement offer and negotiations; client testifying at hearing; reviewing and revising settlement documents; e-mails regarding a Frisco Police Department report; e-mail with Cameron and client regarding payments to him by debtor; client's obligations under settlement agreement; reviewing signed settlement documents; Canadian authorization form; and conferring with Cameron regarding case status and final settlement.

In 2018, Hagood filed suit to collect the unpaid fees and moved to compel arbitration under the terms of the Agreement. Kapai filed a response and his affidavit. The trial court initially denied the motion, but, on Hagood's motion for rehearing, conducted an evidentiary hearing. Afterwards, the trial court granted the motion to compel arbitration. Kapai then filed a motion for rehearing, reasserting his argument that the claim was not within the scope of the arbitration provision in the Agreement, as well as other defenses to arbitration. After hearing the arguments of counsel, the

---

[2] The billing statements indicate Kapai paid $5,000 on May 30, 2014 and $1,392 on October 24, 2014.

trial court rendered an order denying the motion to compel arbitration. Hagood appeals this order and argues the trial court abused its discretion by denying the motion to compel arbitration.

<h3 style="text-align:center">STANDARD OF REVIEW</h3>

We review a trial court's order denying a motion to compel arbitration for abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018), *cert. denied*, 139 S. Ct. 184 (2018); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009) (orig. proceeding). We defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Henry*, 551 S.W.3d at 115. Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo. *Id.*; *Perry Homes v. Cull*, 258 S.W.3d 580, 598 & n.102 (Tex. 2008).

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement. *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014). If the party seeking to compel arbitration meets this burden, the burden then shifts to the party opposing arbitration to prove an affirmative defense to the provision's enforcement, such as waiver. *Id.* We resolve any doubts about the scope of an arbitration agreement in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether a party's claims are within the scope of an arbitration agreement, we focus on the factual allegations and not on the legal causes of action asserted. *Id.* at 754. "[O]nce the party seeking arbitration proves the existence of an enforceable agreement to arbitrate, Texas and federal law recognize a strong presumption 'in favor of arbitration such that myriad doubts—as to waiver, scope, and other issues not relating to enforceability—must be resolved in favor or arbitration.'" *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 521 (Tex. 2015) (quoting *In re Poly–America, L.P.*, 262 S.W.3d 337,

348 (Tex. 2008) (orig. proceeding)).

Although both Texas and federal policy strongly favor arbitration, that policy "cannot serve to stretch a contractual clause beyond the scope intended by the parties or allow modification of the plain and unambiguous provisions of an agreement." *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 356 (Tex. App.—Houston [1st Dist.] 1995, no writ); *see also Branch Law Firm, L.L.P. v. Osborn*, 447 S.W.3d 390, 397 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "Even the exceptionally strong policy favoring arbitration cannot justify requiring litigants to forego a judicial remedy when they have not agreed to do so." *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 496 (Tex. App.—Dallas 2011, pet. denied).

## DISCUSSION

The parties do not dispute the existence of the arbitration provision in the Agreement. The issue before us is whether Hagood's claim falls within the scope of the arbitration provision. Hagood argues the presumption of arbitrability is strongest when the arbitration provision is broad. He argues the clause in the Agreement is broad and covers "any disputes" regarding the firm's services.

While the arbitration paragraph in the Agreement uses broad language, we do not look at the provision in isolation. Arbitration agreements are interpreted under traditional contract principles. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). When construing an agreement to arbitrate contained in a written contract, the courts' primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Id.* at 229; *see Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 459 (Tex. App.—Dallas 2011, no pet.). In order to achieve this objective, courts must examine and consider the entire writing as a whole in an effort to harmonize and give effect to all the provisions of the

contract so that none will be rendered meaningless. *J.M. Davidson*, 128 S.W.3d at 229; *Coker*, 650 S.W.2d at 393. We cannot give any single provision taken alone controlling effect; rather, we must consider all the provisions with reference to the whole instrument. *J.M. Davidson*, 128 S.W.3d at 229; *Coker*, 650 S.W.2d at 393.

Here, although the Agreement states that any disputes regarding the Firm's services will be resolved by binding arbitration, it also states that the scope of the engagement is for legal representation regarding potential questioning by Frisco police "and related matters" and that the Agreement "does not include representation for any other criminal, administrative, civil, or appeal matter." Even though the wording of an arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement in which the parties unambiguously negate or limit the arbitration clause with respect to a given matter in dispute. *Branch Law Firm*, 447 S.W.3d at 395; *see J.M. Davidson,* 128 S.W.3d at 229. Looking at the Agreement as a whole, the parties agreed to arbitrate any disputes regarding the services described in the remainder of the Agreement. Those services include the legal representation regarding the potential questioning of Kapai by the police and related matters, but do not include other criminal, administrative, civil, or appeal matters.

We also consider the facts and circumstances surrounding the formation of the contract to determine the intent of the parties, subject to the parol evidence rule. *Houston Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011) (noting courts may consider surrounding circumstances that inform, rather than vary from or contradict, contract text). At the time they entered into the engagement agreement both Kapai and Hagood were aware of the civil litigation involving Kapai and his former employer and that Kapai was represented by other lawyers in that litigation. This circumstance informs the meaning of the provision excluding representation for any other "criminal, administrative, civil, or appeal matter." Hagood testified he drafted the agreement and intended to limit the scope of his engagement to represent Kapai to the

–7–

potential questioning by police and related matters. Hagood and Kapai clearly contracted in reference to the pending civil litigation and excluded it from the representation. We cannot construe the term limiting representation to the potential police questioning and related matters to include the pending civil litigation and subsequent bankruptcy proceedings when the terms of the contract indicate the parties intended to exclude such matters from the representation.

Hagood next argues the unpaid fees were for "related matters" to the original criminal investigation and, therefore, subject to arbitration. Although Hagood testified that all the services he performed were related to the original criminal investigation, the Agreement does not use the phrase "criminal investigation." The Agreement defines the scope of the engagement as the "potential questioning of [the] client" by the Frisco Police Department and related matters. The parties decided in June 2014 that Kapai would not submit to questioning by the Frisco police and Kapai considered the Agreement ended at that time. The trial court could reasonably conclude that the services performed after that decision was made were not related to the potential police questioning.

The Agreement does not define the phrase "related matters," but the context is clear that those matters must relate to the potential questioning of Kapai by the police. Hagood's interpretation of "related matters" is so broad it renders the exclusion term of the Agreement meaningless. We cannot interpret a contract in a manner that would render portions meaningless. *See J.M. Davidson*, 128 S.W.3d at 229 (courts must examine the entire agreement and give effect to each provision so that none is rendered meaningless). We cannot say on this record that the trial court abused its discretion by determining that the services rendered by Hagood in connection with the civil litigation, some of which was ongoing at the time of the engagement agreement, the subsequent bankruptcy case and adversary proceedings, and the settlement of the civil litigation were related matters to the potential police questioning. The trial court determined, based on

Hagood's testimony and his contemporaneous billing records, that the services he performed were not "related" to the police questioning. That determination is supported by the record and Hagood has not shown that the trial court abused its discretion.

In summary, Hagood testified that all of his services were related to the matter of the potential police questioning of Kapai. Kapai stated in his affidavit that the services after June 2014 were not related to the potential police questioning. The trial court, based on the billing records, agreed with Kapai and those billing records support the trial court's ruling. We conclude Hagood failed to meet his burden to show that the claim falls with the scope of the arbitration provision in the engagement agreement. Thus, the trial court did not abuse its discretion by denying the motion to compel arbitration. We overrule appellants' issue.

## CONCLUSION

Although the parties entered into an agreement that includes a provision requiring arbitration of any disputes about the firm's services, the agreement limited the representation to potential questioning of the client by the police and related matters. Appellants failed to establish that their claim for fees in connection with civil and bankruptcy matters falls within the scope of the arbitration provision. Accordingly, the trial court did not abuse its discretion by denying the motion to compel arbitration. We affirm the trial court's order.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

181485F.P05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DANIEL K. HAGOOD, P.C. AND
FITZPATRICK HAGOOD SMITH AND
UHL, LLP, Appellants

No. 05-18-01485-CV     V.

KUNAL KAPAI, Appellee

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-18-04027-D.
Opinion delivered by Justice Nowell.
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Kunal Kapai recover his costs of this appeal from appellants Daniel K. Hagood, P.C. and Fitzpatrick Hagood Smith and Uhl, LLP.

Judgment entered this 26th day of August, 2019.